595 A.2d 715

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,**

v.

**Joseph HARBAUGH, Appellee.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 17, 1991.

Decided July 17, 1991.

■■■■■■■■■■■

David R. White, Philadelphia, for appellant.

Christopher M. Patterson, Lancaster, for appellee.

Before DOYLE and PELLEGRINI, JJ., and NARICK, Senior Judge.

PELLEGRINI, Judge.

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT), appeals from an order of the Court of Common Pleas of Lancaster County, which sustained the appeal of Joseph Harbaugh (Harbaugh) and set aside the one-year suspension of Harbaugh's driving privilege imposed by DOT.

On March 31, 1989, at 2:38 a.m., Trooper John Jefferson (Jefferson) of the Pennsylvania State Police was dispatched to investigate an automobile accident on Route 340 in Lancaster County. Upon arriving at the scene, Jefferson observed that a vehicle operated by Harbaugh had crossed the opposite lane of Route 340 and struck a utility pole which fell across the roadway and was subsequently struck by another vehicle. Upon interviewing Harbaugh, Jefferson detected the odor of alcohol on his breath and noted that Harbaugh displayed a disheveled appearance, exhibited a swaggering gait, and spoke with slurred speech. Harbaugh admitted to Jefferson that he had consumed two beers at a bar prior to the accident.

Jefferson administered several field sobriety tests to Harbaugh at 3:11 a.m. Because Harbaugh failed all of the tests, he was given a *Miranda* warning [1] and placed under arrest at 3:20 a.m. for driving under the influence. Har-

---

1. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

baugh was then transported to the State Police barracks where he agreed to submit to a breathalyzer test after being informed of the implied consent statute.[2] Pursuant to Section 67 Pa.Code § 77.24(b)(1),[3] Trooper Larry Wixon of the Pennsylvania State Police took two samples of Harbaugh's breath, the first at 4:26 a.m. and the second at 4:30 a.m. Harbaugh fully cooperated in taking the tests, providing a sufficient sample of his breath for both tests. However, because the first sample provided a reading of .191 and the second sample provided a reading of .244, thereby creating a deviation between the readings greater than .020 permitted by regulation,[4] Trooper Wixon determined that the breathalyzer machine was not functioning properly.

Jefferson then administered another set of field sobriety tests to Harbaugh at 5:20 a.m., which Harbaugh passed. Jefferson again apprised Harbaugh of the implied consent law and then requested him to submit to a blood or urine test at Lancaster General Hospital. Although Harbaugh

2. The implied consent statute, which is found under Section 1547(a)(1) of the Vehicle Code, *as amended,* 75 Pa.C.S. § 1547(a)(1), provides the following:

   Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth, shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle while driving under the influence of alcohol or a controlled substance or both.

3. 67 Pa.Code § 77.24(b)(1) provides in pertinent part that the procedure for alcohol breath testing shall include, at a minimum, two consecutive actual breath tests, without a required waiting period between the two tests.

4. 67 Pa.Code § 77.24(b)(2)(i) provides in pertinent part the following: The procedures for alcohol breath testing shall include, at a minimum, one simulator test using a simulator solution designed to give a reading of .10%, to be conducted immediately after the second actual alcohol breath test has been completed. The lower of the two actual breath test results will be the result used for prosecution. The test results will be disregarded, and the breath test device will be removed from service if the difference between the results of the two actual alcohol breath tests is .02 or more for machines read to the second decimal place.

initially agreed to submit to another test at the hospital, upon his arrival at the hospital, he changed his mind and refused, stating that he had taken one test and would not take another. Based upon his refusal to submit to a blood or urine test, DOT sent Harbaugh a letter on April 24, 1989, indicating that his driving privileges were being suspended for a period of one year for violating Section 1547(b)(1) of the Vehicle Code, *as amended*, 75 Pa.C.S. § 1547(b)(1).[5]

Harbaugh appealed his suspension to the Court of Common Pleas of Lancaster County. The trial court determined that although a second chemical test would have been proper once it had been determined that the breathalyzer machine was malfunctioning and the results of that chemical test would have to be disregarded, the request to take another type of chemical test was unreasonable because Harbaugh had passed the second set of field sobriety tests. As such, the trial court reasoned that submission to a second chemical test would have constituted an intrusion upon Harbaugh which would have violated his constitutional right to be free from unreasonable searches and seizures. Consequently, the trial court issued an order sustaining Harbaugh's appeal and setting aside the one-year suspension of his driving privileges imposed by DOT. DOT then appealed from that order.

The issue now before us is whether the trial court erred in determining that Harbaugh's failure to submit to a second chemical test was not a refusal because Harbaugh had passed a second set of field sobriety tests after he had already submitted to a breathalyzer test on a malfunctioning machine.

5. Section 1547(b)(1) of the Vehicle Code, *as amended*, 75 Pa.C.S. § 1547(b)(1), provides the following:
  If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted, but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

■ In order for a motorist's driving privileges to be suspended for refusal to submit to a chemical test, it must be shown that the driver involved: (1) was placed under arrest for driving under the influence of alcohol and that the arresting officer had reasonable grounds to believe that the operator was driving while intoxicated; (2) was asked to submit to a chemical test; (3) refused to comply; and (4) was warned that his license would be revoked if he refused to take the test. *Woods v. Department of Transportation, Bureau of Traffic Safety*, 116 Pa.Commonwealth Ct. 294, 541 A.2d 846 (1988). The burden is on DOT to prove these elements. *Phillips v. Commonwealth of Pennsylvania*, 84 Pa.Commonwealth Ct. 217, 478 A.2d 958 (1984).

In this case, there is no question that Jefferson had reasonable grounds to place Harbaugh under arrest for driving under the influence, that Harbaugh was asked to submit to a chemical breath test, that he was warned that his license would be revoked if he refused to take the test, and that Harbaugh did, in fact, submit to a breathalyzer test. However, DOT argues that because the breathalyzer machine malfunctioned and the test results were inadmissible as evidence, Harbaugh's failure to comply with Jefferson's request that he submit to a second chemical test was a refusal under Section 1547(b) of the Vehicle Code, 75 Pa. C.S. § 1547(b), thereby requiring the suspension of his driving privileges for a period of one year.

■ In response to DOT's argument, Harbaugh contends Jefferson's request that he submit to a second chemical test of blood was unreasonable because he had passed the second set of field sobriety tests, and thus, his failure to take the second chemical test was not a refusal. In *Department of Transportation v. McFarren*, 514 Pa. 411, 417, 525 A.2d 1185, 1188 (1987), a plurality opinion, our Supreme Court stated the following regarding the propriety of administering a second chemical test:

In order to justify a second intrusion, the police officer must establish circumstances which support the reasonableness of a second search.... *A second test may be*

*proper if the first test was inconclusive due to faulty equipment* or faulty performance by the individual. (Emphasis added.)

Thus, when a motorist has already submitted to and performed a valid chemical test, his failure to perform a second chemical test is not a refusal to submit to chemical testing within the meaning of Section 1547(b). *Department of Transportation, Bureau of Driver Licensing v. Fellmeth,* 108 Pa.Commonwealth Ct. 172, 528 A.2d 1090 (1987).

■ Although Harbaugh believes that it was unreasonable for Jefferson to request that he submit to a second chemical test because he had passed the second set of field sobriety tests, field sobriety tests do not constitute chemical testing for purposes of Section 1547(a) of the Vehicle Code, 75 Pa.C.S. § 1547(a). *Wall v. Commonwealth,* 114 Pa.Commonwealth Ct. 397, 539 A.2d 7 (1988). The sole purpose of the field sobriety test is to assist the officer in determining whether a driver should be placed under arrest, not whether the driver is actually intoxicated. *Wall,* 114 Pa.Commonwealth Ct. at 398, 539 A.2d at 9. This court has also held that a police officer who has reasonable grounds to order a chemical test may do so, despite the fact that the driver has passed a field sobriety test prior to the chemical test. *Craze v. Department of Transportation,* 111 Pa.Commonwealth Ct. 136, 533 A.2d 519 (1987), *petition for allowance of appeal denied,* 518 Pa. 644, 542 A.2d 1372.

■ The reasonableness of Jefferson's request that Harbaugh submit to a second chemical test, necessitated by the malfunctioning breathalyzer machine, was not vitiated simply because Harbaugh passed the second set of field sobriety tests. Because the breathalyzer test results were inconclusive due to the malfunctioning machine, the initial chemical test was invalid and the administration of a second, different chemical test would have been reasonable pursuant to our Supreme Court's ruling in *McFarren.*[6]

6. A police officer must also provide a reasonable reason whenever he requests a licensee to submit to a different type of chemical test other than the one originally chosen and administered. *Department of*

Consequently, Harbaugh's refusal to submit to the second chemical test of blood constituted a refusal under Section 1547(b) of the Vehicle Code, 75 Pa.C.S. § 1547(b).[7]

■ Harbaugh also argues that it was unreasonable for Jefferson to request that he take a second chemical test of blood more than three hours after his arrest, because the second chemical test would have been so remote in time from the time of his arrest that the test results would have declined in accuracy. However, the Vehicle Code does not specify that a chemical test must be performed within any stated time after an incident or arrest in order to be admissible. Further, blood-alcohol tests have routinely been admitted into evidence even when the tests were given remotely in time from the occurrence of the alcohol-connected offense. *See Commonwealth v. Arizini*, 277 Pa.Superior Ct. 27, 419 A.2d 643 (1980) (blood sample taken approximately two hours and seventeen minutes after defendant's vehicular accident); *Commonwealth v. Tylwalk*, 258 Pa.Superior Ct. 506, 393 A.2d 473 (1978) (breathalyzer and chemical tests administered approximately four hours and fifteen minutes after defendant's hit-and-run accident); and *Commonwealth v. Trefry*, 249 Pa.Superior Ct. 117, 375 A.2d 786 (1977) (blood sample drawn from defendant about one hour

*Transportation, Bureau of Driver Licensing v. Penich,* 112 Pa.Commonwealth Ct. 303, 535 A.2d 296 (1988). Reasonability is a question of law for the court to decide based upon the unique facts of each case. *Department of Transportation, Bureau of Traffic Safety v. Dreisbach,* 26 Pa.Commonwealth Ct. 201, 363 A.2d 870 (1976). However, the trial court did not address the propriety of the type of second chemical test which was requested, but only discussed the fact that it was requested. Harbaugh also has not raised the issue regarding the type of second chemical test which he was requested to take.

7. Harbaugh also argues that the holding in *McFarren* does not mandate that a second chemical test be administered upon the failure of a breathalyzer machine to properly function, but only provides that a second test *may* be proper under such circumstances. However, *McFarren* also provides that if more than one test is requested, the police officer must offer sufficient evidence to establish the reasonableness of such a request. *McFarren,* 514 Pa. at 418, 525 A.2d at 1188. In this case, Jefferson testified that after being notified by Trooper Wixon that the variance in the test results was too great, he requested Harbaugh to submit to a blood test or urine test at Lancaster General Hospital. (Notes of Testimony at p. 16a.)

and thirty-eight minutes after defendant's hit-and-run accident). Therefore, the fact that the second chemical test would have been administered three hours after Harbaugh's arrest would not have been unreasonable.

Our scope of review in a driver's license suspension case is limited to determining whether the findings of the trial court are supported by competent evidence or whether erroneous conclusions of law have been made. *Pratt v. Department of Transportation, Bureau of Traffic Safety,* 62 Pa.Commonwealth Ct. 55, 434 A.2d 918 (1981). Because the trial court improperly concluded that Harbaugh was not required to submit to a second chemical test after he had passed the second set of field sobriety tests, we find that the trial court erred by sustaining Harbaugh's appeal and setting aside the one-year suspension of his driving privileges as imposed by DOT.

Accordingly, the decision of the trial court is reversed.

## ORDER

AND NOW, this 17th day of July, 1991, the Order of the Court of Common Pleas of Lancaster County, dated November 16, 1990, is reversed.