David Duane BROECKEL, Plaintiff
and Appellant,

v.

Marshall W. MOORE, Director of the
Department of Transportation,
Defendant and Appellee.

Civ. No. 920351.

Supreme Court of North Dakota.

March 24, 1993.

Dennis W. Lindquist of Murtha & Murtha, Dickinson, for plaintiff and appellant.

Michele G. Johnson, Asst. Atty. Gen., Bismarck, for defendant and appellee.

VANDE WALLE, Chief Justice.

David D. Broeckel appealed from a district court judgment which affirmed an administrative hearing officer's decision finding that Broeckel had operated a motor vehicle while having a blood alcohol concentration [BAC] of .10% by weight, and ordering his driver's license suspended for 364 days. We affirm.

Broeckel was arrested for driving while under the influence of alcohol at 1:08 a.m. on May 8, 1992. A blood specimen was drawn at 1:45, and a breath test was administered approximately 24 minutes later. The blood test revealed a BAC of .10%, and the later breath test revealed a BAC of .08%.

As a result of the blood test, a temporary operator's permit was issued which gave notice of the Department of Transportation's intent to revoke Broeckel's driving privileges. Pursuant to Broeckel's request for review, an administrative hearing was held to determine whether Broeckel was driving a motor vehicle at the time when his BAC was at least .10% by weight. NDCC § 39-20-05.

At the administrative hearing, the hearing officer admitted both test results into evidence and concluded that both tests were fairly administered. However, as the foundation for his finding that Broeckel was driving while intoxicated, the hearing officer did not further consider the breath test and relied only on the blood test which revealed a BAC of .10%. The hearing officer stated that, "I find that [the breath] test may have been fairly administered but it was irrelevant because it was not .10 or more as was the blood test results. The .10 blood-alcohol content test result must be used to follow the directives of chapter 39-20." Broeckel's driver's license was suspended for 364 days. Broeckel appealed to the district court which affirmed the agency's decision, and this appeal followed.

When reviewing a driver's license suspension hearing under section 39-20-05, NDCC, we review the decision of the agency and not the district court. *Ding v. Director, North Dakota Department of Transportation*, 484 N.W.2d 496 (N.D. 1992); *Bryl v. Backes*, 477 N.W.2d 809 (N.D.1991). When reviewing the decision, we do not make independent findings of fact or substitute our judgment for that of the agency. We determine only whether a reasoning mind could have determined that the factual conclusions reached were proven by the weight of the evidence from the entire record. *Id.*

We are required to affirm the decision of the agency unless one of the six enumerated reasons listed in section 28-32-19, NDCC, is found. NDCC §§ 28-32-19, 28-32-21; *Bryl, supra.* Our review involves a three-step process: (1) Are the findings of fact supported by a preponderance of the evidence? (2) Are the conclusions of law sustained by the findings of fact? (3) Is the agency decision supported by the conclusions of law? *Ding, supra; Bryl, supra.*

Broeckel contends that he was denied a fair hearing at the administrative level because the hearing officer considered only the blood test that he "failed," and not the breath test that he "passed." Because Broeckel rationalizes that the two tests should be given equal weight, the hearing officer should have considered and weighed both, thereby leaving open the possibility of a decision finding that he had a BAC of less than .10% while operating a motor vehicle.

The scope of an administrative hearing in which the suspension of one's driver's license is at issue is governed in part by section 39-20-05, NDCC:

"If the issue to be determined by the hearing concerns license suspension for operating a motor vehicle while having a blood alcohol concentration of at least ten one-hundredths of one percent by weight, the hearing must be before a hearing officer assigned by the commissioner and at a time and place designated by the commissioner. The hearing must be recorded and *its scope may cover only the issues of whether ... the test results show the person had a blood alcohol concentration of at least ten one-hundredths of one percent by weight.*"

NDCC § 39–20–05(2) [emphasis added]. Relying upon this statute, the State argues that, because a BAC of .10% triggers a possible license suspension and subsequent administrative hearing, only those tests which indicate at least a BAC of .10% need be considered by a hearing officer. However, this statute must be read with section 39–20–07, NDCC, which states:

"Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor, drugs, or a combination thereof, *evidence of the amount of alcohol, drugs, or a combination thereof in the person's blood at the time of the act alleged as shown by a chemical analysis of the blood, breath, saliva, or urine is admissible.* For the purpose of this section:

. . . . .

3. A person having an alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after driving or being in physical control of a vehicle is under the influence of intoxicating liquor at the time of driving or being in physical control of a vehicle."

NDCC § 39–20–07 [emphasis added]. The clear wording of this statute requires that all appropriate chemical tests be admitted into evidence.[1]

▮▮▮ Statutes relating to the same subject matter should be construed together so as to harmonize them if possible. *State v. Woytassek,* 491 N.W.2d 709 (N.D.1992).[2] Reading together section 39–20–05, NDCC, and section 39–20–07, NDCC, we determine that, although the hearing officer must allow into evidence appropriate test results which show a BAC below .10%, the hearing officer need further consider them only if they tend to prove the BAC test results of .10% or greater were the result of a test not fairly administered. *See Schirado v. North Dakota State Highway Comm'r,* 382 N.W.2d 391 (N.D.1986).

In this case, both test results were admitted into evidence in accordance with section 39–20–07, NDCC. However, Broeckel did

1. The apparent rationale for the required admission is found in the legislative history of the statute. When the legislature was considering adopting chapter 39–20, NDCC, in 1959, Judge Eugene Burdick testified to the House Judiciary Committee that, "[t]his act permits the court and jury to have the true facts before them." *Minutes of the House Judiciary Committee on S.B. 142,* 36th Leg., Feb. 26, 1959. *See also, State v. Nodland,* 493 N.W.2d 697 (N.D.1992) [Section 39–20–07, NDCC, eases the requirements for admissibility of chemical test results while ensuring that the tests upon which the results are based are fairly administered.]; *Kummer v. Backes,* 486 N.W.2d 252, 255 (N.D. 1992) ["This section was designed to allow chemical results into evidence more easily ..."]. By requiring the results of all appropriate chemical tests to be entered into evidence—those above and below a reading of .10%—the hearing officer has all "the true facts" before him or her.

2. In testimony to the House Judiciary Committee in which the promulgation of Chapter 39–20, NDCC, was being discussed, Judge Eugene Burdick testified that this chapter was being modeled after a uniform act as approved in 1958 by the National Conference on State Uniform Acts. *Minutes of the House Judiciary Committee on S.B. 142,* 36th Leg., Feb. 26, 1959. At present, many states have statutes similar to sections 39–20–05 and 39–20–07, NDCC, requiring, on one hand, the admission of all chemical tests, and on the other hand, the scope of the administrative hearing to cover only BAC results over a certain amount. *E.g.,* Ill.Rev.Stat. ch. 95½, para. 11–501.1; Ind.Code chapter 9–11–4; Iowa Code chapter 321J; Utah Code Ann. chapter 41–6; W.Va.Code chapter 17C–5; Wis.Stat. § 346.-63. These states have apparently not considered the question currently before this Court.

not successfully contest the procedural or substantive validity of the blood test taken at the direction of the law enforcement officer. Evidence of different BAC results from tests taken at different times is not alone indicative of the invalidity of prior or subsequent BAC tests. The hearing officer could not "average" the two test results. They merely disclosed that Broeckel had different, but not widely divergent, BAC readings at different times. Because a valid test was entered into evidence which indicated a BAC of .10% during the two-hour period, a test indicating a lesser amount need not be further considered by the hearing officer if the test on which the hearing officer is relying—the one indicating a BAC of .10%—is not challenged as invalid.[3]

■ Broeckel argues that if we adopt this line of reasoning, there is nothing to prevent a law enforcement officer from administering multiple tests in order to obtain a .10% BAC when the first test or tests administered resulted in a BAC below .10%. This fear is warrantless. Once a motorist is in police custody and a chemical test has been properly administered yielding a readable result, the motorist has a right to refuse any subsequent chemical tests used for determining his or her blood alcohol content. *Commonwealth v. Harbaugh*, 141 Pa.Cmwlth. 288, 595 A.2d 715 (1991); *Commonwealth v. Bull*, 382 Pa.Super. 559, 555 A.2d 1341 (1989). This prevents law enforcement officials not only from attempting a "shopping spree" through the motorist's bodily fluids in search of evidence which would indicate a BAC of more than .10%, *McKeown v. State*, 187 Ga.App. 685, 371 S.E.2d 243 (1988), but also prevents them from violating a motorist's Fourth, Fifth, and Fourteenth Amendment rights under the United States Constitution. *People v. Klyczek*, 162 Ill.App.3d

557, 114 Ill.Dec. 628, 516 N.E.2d 783 (1987). *See also, McKeown, supra; Commonwealth v. Fellmeth*, 108 Pa.Cmwlth. 172, 528 A.2d 1090 (1987); *State v. Russell*, 41 Wash.App. 391, 704 P.2d 1214 (1985).

Broeckel also raises an issue concerning the time interval between the date the blood sample was taken and the date the State Toxicologist received the blood sample. Broeckel was administered the blood test in Dickinson on May 8, 1992. The blood test was mailed to the State Toxicologist in Fargo, but was not received until May 15, 1992. Broeckel alleges that during this extended time period, the blood may have somehow "fermented" and made its own alcohol, thus skewing the blood test result to Broeckel's detriment. Not only did Broeckel present no testimony which would support this claim, neither the Legislature nor the State Toxicologist has promulgated a statute or regulation which would imply a time limit on the validity of blood samples.

■ Because a blood test accompanied by a signed report by the State Toxicologist attesting to following proper testing procedures is prima facie evidence of the results of a chemical analysis, *Salter v. Hjelle*, 415 N.W.2d 801 (N.D.1987), *State v. Hanson*, 345 N.W.2d 845 (N.D.1984), we assume, absent any evidence by Broeckel to the contrary, that if a passage of time would promote blood fermentation, the State Toxicologist would have issued a memorandum warning of such a possibility and suggested a method of correcting it. *Keepseagle v. Backes*, 454 N.W.2d 312 (N.D.1990) [statute requires only that blood be drawn, not analyzed, within two hours; if blood sample is drawn within two hours and adequately preserved for analysis, the results are valid and may be used to support a license suspension].

3. In *City of Fargo v. Stensland*, 492 N.W.2d 591 (N.D.1992), we addressed the issue of whether the provisions of chapter 39–20, NDCC, which required testing within a certain time period after arrest, violated a motorist's substantive due process rights when a motorist with a BAC below .10% while driving could be convicted when, due to the time delay between arrest and testing, the motorist's BAC rises above that of

.10%. Pertinent to Broeckel's case, *Stensland* illustrates the point that regardless of what may happen before, during, or after the testing period, as long as a motorist's BAC is above .10% within the statutorily-prescribed time interval, that motorist may be arrested for driving while intoxicated. Broeckel's BAC was above .10% within the two-hour time interval as prescribed by sections 39–08–01 and 39–20–07, NDCC.

The judgment of the district court is affirmed.

MESCHKE, LEVINE, NEUMANN and SANDSTROM, JJ., concur.