Timothy John MAHER, Plaintiff
and Appellant,

v.

NORTH DAKOTA DEPARTMENT OF
TRANSPORTATION, Defendant
and Appellee.

Civ. No. 930152.

Supreme Court of North Dakota.

Jan. 5, 1994.

Thomas A. Dickson, Nodland & Dickson, Bismarck, for plaintiff and appellant.

Carmen G. Miller, Asst. Atty. Gen., Bismarck, for defendant and appellee.

VANDE WALLE, Chief Justice.

Timothy Maher appealed from a district court judgment affirming an administrative order suspending Maher's driving privileges. We affirm.

On November 10, 1992, at approximately 1:07 a.m., a Bismarck city police officer observed Maher driving westbound on West Bismarck Expressway Avenue. The officer saw Maher's vehicle swerve to the right to avoid hitting the guardrail and estimated that Maher missed hitting the guardrail by only a few feet. The officer followed Maher after observing the vehicle swerve a second time.

The officer estimated that Maher changed driving lanes approximately five times in the course of eight-tenths of a mile on Expressway Avenue. The lane changes were made without signaling. There was no other traffic on the avenue. Maher entered Expressway Bridge with the officer following at approximately one-quarter of a mile.

Expressway Bridge extends across the Missouri River from Burleigh County to Morton County. The river also serves as the western boundary to the city limits of Bismarck, which lies within Burleigh County. Expressway Bridge is approximately one-half mile long.

While crossing the bridge, Maher's vehicle swerved to the right to avoid hitting a median. The officer observed the vehicle change driving lanes approximately three more times while on the bridge; twice the officer observed Maher drive very close to the north barrier of the bridge. When the officer was on the west end of the bridge, he activated his emergency lights and siren and moved to within approximately ten car-lengths of Maher's vehicle. Maher stopped his vehicle in Morton County, at a point approximately 1.2 miles past the point on the bridge where the officer had activated his lights.

The officer approached Maher's vehicle and asked him for his drivers license. The officer noted that Maher's speech was slurred and that a strong odor of alcohol was coming from the vehicle and from Maher. Maher was then asked to perform a series of field sobriety tests; he failed a number of the tests. The officer placed Maher under arrest and transported him to the Bismarck police department. An intoxilizer test was performed, indicating an alcohol concentration in excess of .10 percent by weight.

Maher was charged in Bismarck Municipal Court with driving under the influence of alcohol or with a blood-alcohol content of .10 percent by weight. Maher was issued a temporary operator's permit, giving notice of the intent of the Department of Transportation to revoke Maher's driving privileges. Maher submitted a timely request for an administrative hearing. Maher did not testify at the hearing. After finding that Maher was stopped pursuant to section 40–20–05(2), N.D.C.C., the hearing officer ordered the suspension of Maher's driving privileges for a period of 91 days. Maher appealed the decision to the district court.

Maher contends that the arrest, which was made within the jurisdictional limits of Morton County, was not within the jurisdiction of the Bismarck city police officer. Specifically, Maher argues that, although the doctrine of "hot pursuit" may extend the jurisdiction of an arresting officer, there was no evidence upon which the hearing officer could have concluded that the officer in this instance was in "hot pursuit" of Maher.

Section 40–20–05, N.D.C.C., provides that the jurisdiction of a municipal police officer extends for a distance of one and one-half miles in all directions beyond the city limits. Jurisdiction may extend beyond the one and one-half mile limit when an officer is in "hot pursuit", i.e., when the officer is in "immedi-

ate pursuit of a person who is endeavoring to avoid arrest." [1] N.D.C.C. § 40–20–05(2). The hearing officer found that Maher had endeavored to avoid arrest and that the Bismarck police officer therefore acted within his authority when he pursued and arrested Maher in Morton County.

▮ Review of an administrative agency decision extends to whether the findings of fact are supported by a preponderance of the evidence, whether the conclusions of law are sustained by the findings of fact, and whether the agency decision is supported by the conclusions of law. N.D.C.C. § 28–32–19; *Bryl v. Backes,* 477 N.W.2d 809 (N.D.1991); *Evans v. Backes,* 437 N.W.2d 848 (N.D.1989). When reviewing whether or not the hearing officer's findings of fact are supported by a preponderance of the evidence, "we do not make independent findings of fact or substitute our judgment for that of the agency, but determine only whether a reasoning mind could reasonably have determined that the facts or conclusions were supported by the weight of the evidence." *Evans, supra,* 437 N.W.2d at 849. On appeal, we review the Department's decision and not the decision of the district court. *Dittus v. North Dakota Dept. of Transp.,* 502 N.W.2d 100 (N.D.1993); *Johnson v. N.D. Workers' Comp. Bureau,* 496 N.W.2d 562 (N.D.1993).

▮ At the administrative hearing, the officer testified that he attempted to stop Maher's vehicle by activating his emergency lights and siren, while at a distance of approximately ten car-lengths behind Maher's vehicle. The officer's testimony indicates that Maher continued driving another 1.2 miles before stopping. The incident took place late at night and there was no other traffic on Expressway Bridge. Although it is possible, as Maher argues on appeal, that he failed to stop only because he did not see the

1. Section 40–20–05(2), N.D.C.C., restricts the "hot-pursuit" authority of the police officer to "whenever obtaining the aid of peace officers having jurisdiction" beyond the jurisdictional limits of the city "would cause a delay permitting escape." The hearing officer, by finding that the arrest was pursuant to section 40–20–05(2), necessarily found that obtaining the aid of Morton County or Mandan police officers, as the case may be, would cause delay permitting an escape.

There is no evidence that, prior to the stop, the police officer knew that Maher was the individual driving the vehicle. In view of the fact that a charge of Driving Under the Influence requires identification and direct observance or testing of the individual driving the motor vehicle within two hours after driving, *see* N.D.C.C. § 39–08–01(1), we believe there is sufficient evidence to sustain the finding that obtaining assistance would have permitted escape.

officer's emergency lights or hear the siren, there was no testimony that this was the reason for his failure to stop. The evidence of the failure to stop in the presence of the emergency lights and siren supports by a preponderance of the evidence the finding that the failure to stop was an endeavor to avoid arrest. The decision is for the hearing officer, who heard the witnesses and had the opportunity to judge their credibility.[2] Because the finding is supported by a preponderance of the evidence, we will not disturb that finding on appeal.

We conclude that a reasoning mind could reasonably determine that Maher had attempted to evade arrest by failing to stop his vehicle at an earlier point. Because the evidence presented at the administrative hearing supports the hearing officer's finding that the Bismarck police officer was in "hot pursuit" of Maher, we need not consider whether the arrest was made within one and one-half miles of the Bismarck city limits.

The judgment of the district court is affirmed.

MESCHKE, LEVINE and NEUMANN, JJ., and RALPH J. ERICKSTAD, Surrogate Judge, concur.

RALPH J. ERICKSTAD, Surrogate Judge, sitting in place of DALE V. SANDSTROM, J., disqualified.

2. On appeal, Maher directed our attention to the subsequent decision of the Burleigh County Court, which suppressed evidence regarding Maher's arrest and the results of the intoxilizer test. It is sufficient for purposes of this appeal to note that the suppression hearing was subsequent to the administrative hearing; the evidence at the suppression hearing was different from that presented at the administrative hearing; and, most significantly, the evidence of the suppression hearing is not part of the administrative-hearing record, which is the evidentiary record we review on appeal.