McEvers, Justice.
 

 [¶ 1] Courtney Krueger appeals from a judgment affirming a decision of the Department of Transportation suspending his driving privileges for two years. Because the Traill County sheriff's deputy had jurisdiction to make the arrest in Grand Forks County and Krueger's statutory rights and constitutional rights were not violated by the deputy's administration of three breath tests, we affirm.
 

 I
 

 [¶ 2] The hearing officer found that during the early morning hours of June 3, 2017, a Traill County sheriff's deputy observed Krueger driving erratically while leaving Hatton and heading north on Highway 18. The deputy activated the emergency lights on his patrol vehicle while in Traill County, but Krueger's vehicle continued north while slowing down for about one minute before stopping "approximately 1/2 mile north of mile marker 139" in Grand Forks County. The deputy testified this was "about a quarter mile north into Grand Forks County." The deputy observed that Krueger's speech was slurred, his eyes were bloodshot, and he smelled of alcohol. The deputy ordered Krueger out of the vehicle and began conducting field sobriety tests. During the traffic stop, a Grand Forks County sheriff's deputy, who learned of the situation only after scanning the Traill County Sheriff's Office radio, arrived at the scene. The Traill County deputy continued the field sobriety tests, which Krueger failed.
 

 [¶ 3] The Traill County deputy placed Krueger under arrest for driving under the influence after he failed an onsite screening test and the Grand Forks County deputy assisted with a search of Krueger's vehicle. The Traill County deputy transported Krueger for 30 to 40 minutes to the Traill County Sheriff's Office in Hillsboro. Krueger was given a breath test which registered a blood alcohol concentration of 0.146 percent. Realizing he had failed to read the implied consent advisory to Krueger before the first test, the deputy gave the advisory and again asked Krueger to take a breath test. Krueger did, but this test was automatically terminated because the machine detected radio frequency interference. The deputy asked again if Krueger would take the breath test and, after being reminded of the consequences for refusal, Krueger consented. The third test revealed a blood alcohol concentration of 0.141 percent.
 

 [¶ 4] Krueger did not testify or offer any evidence at the administrative license suspension hearing. Krueger challenged the jurisdictional validity of his arrest in Grand Forks County by a Traill County sheriff's deputy, and the admissibility of the breath test results after the deputy requested that he take the test three
 
 *852
 
 times. The hearing officer found the Traill County deputy was in "fresh pursuit" of Krueger when he initiated the traffic stop and N.D.C.C. § 11-15-33(2) allowed the deputy to complete the arrest. The hearing officer also determined the breath test result was admissible because "[g]iven the circumstances in this case, administering the three tests was reasonable" and Krueger "offered no evidence of prejudice." The Department suspended Krueger's driving privileges for two years, and the district court affirmed the Department's decision.
 

 II
 

 [¶ 5] Krueger argues the Department erred in suspending his driving privileges because the arresting officer lacked jurisdiction and the breath test results were admitted in evidence in violation of his constitutional rights.
 

 [¶ 6] We must affirm the Department's order unless, in part pertinent to this case, the following are present:
 

 1. The order is not in accordance with the law.
 

 2. The order is in violation of the constitutional rights of the appellant.
 

 ....
 

 5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
 

 6. The conclusions of law and order of the agency are not supported by its findings of fact.
 

 N.D.C.C. § 28-32-46. In
 
 Martinson v. Levi
 
 ,
 
 2017 ND 264
 
 , ¶ 9,
 
 903 N.W.2d 286
 
 , we explained:
 

 When reviewing an administrative agency's decision, we determine only whether a reasoning mind reasonably could have concluded the findings were supported by the weight of the evidence from the entire record. This Court does not make independent findings or substitute its judgment. Once the facts are established, their significance presents a question of law, which we review de novo. Our standard of review for a claimed violation of a constitutional right is de novo.
 

 (quoting
 
 McCoy v. N.D. Dep't of Transp.
 
 ,
 
 2014 ND 119
 
 , ¶ 8,
 
 848 N.W.2d 659
 
 ).
 

 A
 

 [¶ 7] Krueger argues the Traill County deputy lacked jurisdiction to arrest him in Grand Forks County.
 

 [¶ 8] " '[A]s a general rule a police officer acting outside his jurisdiction is without official capacity and without official power to arrest.' "
 
 Kroschel v. Levi
 
 ,
 
 2015 ND 185
 
 , ¶ 7,
 
 866 N.W.2d 109
 
 (quoting
 
 Johnson v. Dep't of Transp.
 
 ,
 
 2004 ND 148
 
 , ¶ 10,
 
 683 N.W.2d 886
 
 ). However, N.D.C.C. § 11-15-33(2), allows county law enforcement officers to cross a county line to make an arrest under certain circumstances:
 

 A county law enforcement officer in fresh pursuit may enter another county and may continue within that county in fresh pursuit to make an arrest, in compliance with a warrant or without a warrant under the conditions of section 29-06-15, if obtaining the aid of law enforcement officers having jurisdiction in that county would cause a delay permitting escape. As used in this section, "fresh pursuit" means fresh pursuit as defined in section 29-06-07.
 

 [¶ 9] Section 29-06-15(1)(a), N.D.C.C., allows a law enforcement officer to arrest a person without a warrant:
 

 For a public offense, committed or attempted in the officer's presence and for the purpose of this subdivision, a crime must be deemed committed or attempted in the officer's presence when what
 
 *853
 
 the officer observes through the officer's senses reasonably indicates to the officer that a crime was in fact committed or attempted in the officer's presence by the person arrested.
 

 [¶ 10] "Fresh pursuit" is defined in N.D.C.C. § 29-06-07 as including:
 

 fresh pursuit as defined by the common law, and also the pursuit of a person who has committed or who is reasonably suspected of having committed a felony, misdemeanor, or traffic violation. It also shall include the pursuit of a person suspected of having committed a supposed felony, misdemeanor, or traffic violation, though no felony, misdemeanor, or traffic violation has been actually committed, if there is reasonable ground for believing that a felony, misdemeanor, or traffic violation has been committed. Fresh pursuit, as the term is used in this chapter, shall not necessarily imply instant pursuit, but pursuit without unreasonable delay.
 

 [¶ 11] The hearing officer found:
 

 [The Traill County deputy] was a witness to the vehicle behavior supporting the stop and was qualified to make the arrest under North Dakota law. When the vehicle did not stop immediately, the Deputy ... was justified in making the stop himself. The statute allows him to then complete the arrest.
 

 Krueger does not argue that the Traill County deputy was not in "fresh pursuit" when the officer initiated the traffic stop in Grand Forks County. Rather, Krueger argues the hearing officer could not reasonably find the Traill County deputy's arrest was necessary to prevent his escape because a Grand Forks County deputy had arrived and was available to arrest him. Krueger also argues the hearing officer's interpretation of N.D.C.C. § 11-15-33(2) would allow a county deputy in fresh pursuit to traverse the state and make an arrest despite the presence and availability of intervening county law enforcement officers.
 

 [¶ 12] Both parties rely on
 
 Maher v. N.D. Dep't of Transp.
 
 ,
 
 510 N.W.2d 601
 
 , 603-04 (N.D. 1994), in which this Court affirmed suspension of driving privileges based on an arrest that occurred outside the officer's jurisdiction. A Bismarck police officer observed the driver swerving erratically, followed him over the Expressway Bridge into Mandan, arrested him there, and took him back to Bismarck for an intoxilyzer test.
 

 Id.
 

 at 602-03
 
 . This Court ruled the evidence was sufficient to sustain the finding that the officer was in "hot pursuit" because a reasoning mind could have concluded the driver attempted to evade arrest by failing to stop at an earlier point.
 

 Id.
 

 at 604
 
 . The Court further noted:
 

 Section 40-20-05(2), N.D.C.C. [the equivalent police officer statute to N.D.C.C. § 11-15-33(2) ], restricts the "hot-pursuit" authority of the police officer to "whenever obtaining the aid of peace officers having jurisdiction" beyond the jurisdictional limits of the city "would cause a delay permitting escape." The hearing officer, by finding that the arrest was pursuant to section 40-20-05(2), necessarily found that obtaining the aid of Morton County or Mandan police officers, as the case may be, would cause delay permitting an escape. There is no evidence that, prior to the stop, the police officer knew that Maher was the individual driving the vehicle. In view of the fact that a charge of Driving Under the Influence requires identification and direct observance or testing of the individual driving the motor vehicle within two hours after driving,
 
 see
 
 N.D.C.C. § 39-08-01(1), we believe there is sufficient evidence to sustain the finding that obtaining assistance would have permitted escape.
 

 *854
 

 Id.
 

 at 603 n.1. Because the hearing officer in this case found that the arrest was made under N.D.C.C. § 11-15-33(2), we also conclude as we did in
 
 Maher
 
 that the hearing officer necessarily found obtaining the aid of Grand Forks County law enforcement officers would cause delay permitting an escape.
 

 [¶ 13] Krueger argues there is insufficient evidence to support this finding. The traffic stop in this case occurred not far from the county border and the Traill County deputy did not seek the assistance of Grand Forks County law enforcement officers. The record does not reflect that the Traill County deputy had any knowledge that a Grand Forks County deputy was in the vicinity when he initiated the traffic stop. If the deputy had first chosen to request assistance from Grand Forks County before making the traffic stop, Krueger possibly would have continued to drive and avoid apprehension. By the time the Grand Forks County deputy arrived, the Traill County deputy was in the midst of investigating the elements of a driving under the influence charge, which requires identification and direct observance or testing of the individual driving the motor vehicle within two hours after driving.
 

 [¶ 14] The only factual difference between this case and
 
 Maher
 
 is the arrival of the Grand Forks County deputy between the traffic stop and the arrest. However, N.D.C.C. § 11-15-33(2) states that a county law enforcement officer "in fresh pursuit may enter another county and may continue within that county in fresh pursuit
 
 to make an arrest
 
 ." (Emphasis added.) Statutory interpretation is a question of law fully reviewable on appeal,
 
 see
 

 Guthmiller v. N.D. Dep't of Transp.,
 

 2018 ND 9
 
 , ¶ 6,
 
 906 N.W.2d 73
 
 , and we interpret statutes to give words their plain, ordinary and commonly understood meaning.
 
 See
 

 Kroschel
 
 ,
 
 2015 ND 185
 
 , ¶ 9,
 
 866 N.W.2d 109
 
 . Nothing in the legislative history of the statute suggests that it was intended to mean anything other than what it plainly and unambiguously says. A county law enforcement officer in fresh pursuit may enter another county "to make an arrest." The statute does not state an officer in fresh pursuit is divested of jurisdiction to make an arrest if a law enforcement officer who would otherwise have jurisdiction arrives at the scene of the traffic stop. We need not address Krueger's argument that our interpretation of the statute will lead to statewide fresh pursuits by county law enforcement officers. Those facts are not before us. Section 11-15-33(2), N.D.C.C., specifically allows an officer in fresh pursuit to enter another county and make an arrest "within that county."
 

 [¶ 15] Because the arrival of the Grand Forks County deputy between the traffic stop and the arrest is irrelevant under these circumstances, we conclude the hearing officer's finding that obtaining assistance would have permitted escape is supported by a preponderance of the evidence. We conclude the hearing officer did not err in determining that the Traill County deputy had jurisdiction to arrest Krueger in Grand Forks County.
 

 B
 

 [¶ 16] Krueger argues the breath test results should not have been admitted in evidence because the officer's administration of three breath tests violated his statutory rights and constitutional right to be free from unreasonable searches.
 

 [¶ 17] First, Krueger relies on
 
 Broeckel v. Moore
 
 ,
 
 498 N.W.2d 170
 
 , 171 (N.D. 1993), in which this Court affirmed a license suspension where the driver was given a blood test followed by a breath test, but only the blood test revealed a blood alcohol content above the presumptive limit. The hearing officer relied on the blood test to
 
 *855
 
 suspend the license and found the breath test "irrelevant."
 

 Id.
 

 This Court concluded, because a valid blood test was entered into evidence indicating a blood alcohol content above the presumptive limit, the breath test indicating a lesser blood alcohol content "need not be further considered."
 

 Id.
 

 at 173
 
 . This Court cautioned:
 

 Broeckel argues that if we adopt this line of reasoning, there is nothing to prevent a law enforcement officer from administering multiple tests in order to obtain a .10% BAC when the first test or tests administered resulted in a BAC below .10%. This fear is warrantless. Once a motorist is in police custody and a chemical test has been properly administered yielding a readable result, the motorist has a right to refuse any subsequent chemical tests used for determining his or her blood alcohol content. This prevents law enforcement officials not only from attempting a "shopping spree" through the motorist's bodily fluids in search of evidence which would indicate a BAC of more than .10%, but also prevents them from violating a motorist's Fourth, Fifth, and Fourteenth Amendment rights under the United States Constitution.
 

 Id.
 

 (internal citations omitted). A "properly administered" chemical test includes its "procedural or substantive validity."
 

 Id.
 

 [¶ 18] We reject Krueger's claim that under
 
 Broeckel
 
 , he had an absolute right to refuse the second and third breath tests in this case. North Dakota law does not prohibit law enforcement from administering more than one chemical test.
 
 See
 
 N.D.C.C. § 39-20-01(1) (individuals operating motor vehicles "shall consent ... to a chemical test, or tests"); N.D.C.C. § 39-20-01(2) (the "test or tests" must be administered). We have said that a "motorist may be required to submit to a reasonable request for a second test."
 
 State v. Storbakken
 
 ,
 
 552 N.W.2d 78
 
 , 82 (N.D. 1996). Here, the first breath test was procedurally invalid because the deputy failed to read Krueger the implied consent advisory, which rendered the chemical test inadmissible under N.D.C.C. § 39-20-01(3)(b). The second test was substantively invalid because it automatically terminated when the machine detected radio frequency interference. The third test was the only test that produced a procedurally and substantively valid result, and all three of the tests were admitted in evidence. The situation here was not a "shopping spree" through a motorist's bodily fluids in an attempt to obtain a blood alcohol content above the legal limit, but was an attempt to obtain a single valid result. We conclude the hearing officer's finding that the deputy's administration of three breath tests on Krueger was reasonable is supported by the preponderance of the evidence.
 

 [¶ 19] To the extent Krueger is asserting his consent to the tests was rendered involuntary by the deputy's repeated recitations of the implied consent advisory, we reject this argument as well. "An accurate advisory does not by itself compel the conclusion that consent was not voluntary. In all cases, the totality of the circumstances must be considered."
 
 State v. Fleckenstein
 
 ,
 
 2018 ND 52
 
 , ¶ 7,
 
 907 N.W.2d 365
 
 . Krueger did not testify at the administrative hearing or offer any evidence that his consent to the tests was involuntary. Sole reliance on multiple recitations of the advisory by the deputy is insufficient to show involuntariness of consent.
 

 III
 

 [¶ 20] We do not address other issues raised because they are unnecessary to the decision or are without merit. The judgment is affirmed.
 

 [¶ 21] Lisa Fair McEvers
 

 Daniel J. Crothers
 

 Jerod E. Tufte
 

 Jon J. Jensen
 

 Gerald W. VandeWalle, C.J.