THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. GARY C. COFER, Defendant-Appellee.
Third District    No. 3—84—0706

Opinion filed July 26, 1985.

WOMBACHER, J., dissenting.

Bruce W. Black, State's Attorney, of Pekin (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

No brief filed for appellee.

JUSTICE SCOTT delivered the opinion of the court:

Following an implied consent hearing, the trial court ruled that the defendant, Gary C. Cofer, did not refuse to complete the requested chemical test. The State appeals that portion of the court's order, arguing the court misinterpreted and incorrectly applied the implied consent statute (hereinafter the statute) (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501.1), to the instant circumstances. We agree.

Since the appellant failed to include a verbatim report of proceedings in the record on appeal, we base our review upon the certified report of proceedings. 87 Ill. 2d R. 323(c).

The defendant-appellee failed to file a brief. However, where the record is simple and the claimed error can be easily decided without an appellee's brief, the reviewing court may decide the merits of the appeal. In fact, if the appellant's brief demonstrates *prima facie* reversible error supported by the record, the judgment of the trial court may be reversed. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

The evidence at the defendant's implied consent hearing established that at approximately 8:35 p.m. on September 5, 1984, Betty Draher heard a crash. She exited her home, and observed the defendant emerge from a red Corvette which had struck her wooden fence, a chainlink fence, and a tree. She then noticed the defendant walking down the middle of the street.

Shortly thereafter, Pekin police officer J. Long arrived at the

defendant's residence and saw the defendant seated on his motorcycle with the engine running and the headlight activated. The defendant turned off the engine and dismounted. Based on the defendant's admission that he abandoned his car, the strong alcoholic odor of the defendant's breath, and his balance difficulty, Officer Long arrested the defendant for driving under the influence (hereinafter DUI) (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501). Officer Long transported the defendant to the police station where the defendant submitted to a breath test. Both chambers of the "intoxilyzer machine" filled and the second cylinder clicked shut. The machine digitally registered .22%, but failed to print the results. Officer Long explained the malfunction to the defendant and tested the machine. The defendant then refused to submit to another breath test.

The defendant admitted that he had been drinking and that he could not read the test results on the digital screen which was facing him.

In ruling for the defendant, the court found that the defendant was arrested for DUI; that the officer had reasonable grounds to believe the defendant was DUI; and that the defendant indicated an understanding of the implied consent warning. The court also found that the defendant completed the initial breath test even though the machine did not produce a written printout of the .22% blood-alcohol result. Finally, the court ruled that the defendant's refusal to submit to the second test was not a refusal warranting license suspension.

Public Act 82—311, effective January 1, 1982, deleted the portion of the prior implied consent statute that stated a breath test consisted of two breath analyses taken not less than 15 minutes apart (Ill. Rev. Stat. 1979, ch. 95½, par. 11—501.1), and added the language which provides, in part, that any person who drives a motor vehicle on Illinois highways is deemed to have consented "to a chemical test or tests of blood, breath, or urine" to determine the alcohol level of his blood. "The test or tests shall be administered at the direction of the arresting officer. *** [W]hether such person refused to submit and complete the test or tests upon the request of the law enforcement officer" is resolved at the civil implied consent hearing. Ill. Rev. Stat. 1983, ch. 95½, par. 11—501.1.

The statute must be construed to give effect to the legislative intent in conformity with the statute's general purpose. (*Balmes v. Hiab-Foco, A.B.* (1982), 105 Ill. App. 3d 572, 434 N.E.2d 482.) The implied consent law was enacted to deter drivers from drinking by compelling them to submit to chemical tests to obtain objective evidence of intoxication (*People v. Naseef* (1984), 127 Ill. App. 3d 70, 468

N.E.2d 466), while preserving their due process rights. *People v. Kiss* (1984), 122 Ill. App. 3d 1056, 462 N.E.2d 546.

■ Under the statute, a motorist impliedly consents to any blood-alcohol test requested at the discretion of the law enforcement agency. Refusal to submit to any one test constitutes a statutory refusal. (*People v. Kiss* (1984), 122 Ill. App. 3d 1056, 462 N.E.2d 546.) We must decide whether the defendant ultimately complied with the officer's instructions and completed a test that yielded blood-alcohol readings (*People v. Naseef* (1984), 127 Ill. App. 3d 70, 468 N.E.2d 466), or whether the defendant circumvented the statutory requirement by refusing to cooperate to obtain test results. *People v. Schuberth* (1983), 115 Ill. App. 3d 302, 450 N.E.2d 459.

Officer Long, believing that the machine had malfunctioned by not printing the blood-alcohol results of the first test, requested that the defendant submit to a second breath test. We believe that the legislature anticipated this situation by directing the arresting officer to determine the blood-alcohol level by administering "a chemical test or tests of blood, breath, or urine ***." In compliance with the statute, Officer Long chose to administer a breath test and when that test failed to produce objective evidence of intoxication, justifiably, under these circumstances, requested that the defendant submit to a second breath analysis. We neither suggest that multiple analyses are always appropriate, nor do we encourage arbitrary attempts to whittle away a defendant's due process rights. However, to disapprove the officer's actions would allow the defendant to circumvent the above statutory purpose.

Therefore, we find that the trial court's ruling that the defendant's refusal was not a refusal under the statute was against the manifest weight of the evidence. *People v. Schuberth* (1983), 115 Ill. App. 3d 302, 450 N.E.2d 459.

Accordingly, the judgment of the circuit court of Tazewell County is reversed and the cause remanded for further proceedings consistent with this decision.

Reversed and remanded.

STOUDER, J., concurs.

JUSTICE WOMBACHER, dissenting:

The trial court found that the defendant's refusal to submit to the officer's request that he take a second breathalyzer test, upon the mechanical failure of the printing mechanism during the first test, was

not a refusal as defined by section 11—501.1(c).

I agree with that statement and, therefore, respectfully dissent. The State claims that the failure of the printer made the first test "not a valid test" and "worthless." I do not believe this to be so. On the record before us, both chambers of the breathalyzer filled with air, the second cylinder clicked shut, and the digital readout registered .22%. The only thing that did not operate was the printing mechanism. The State claims that the machine, therefore, malfunctioned. Only the printer did. The rest of the machine worked properly.

To say that, because the printer did not work, therefore the breathalyzer is defective and the test invalid, is a *non sequitur*. The printer has nothing to do with the analysis of air. The printer is an added facility or convenience that in no way inhibits, enhances or otherwise affects the intended function of the machine. To hold otherwise would be tantamount to saying that the machine could not analyze air without paper in the printer! An analogy to everyday usage is a calculator with a printing function. The calculator can still calculate even if its printer is broken. Likewise, the breathalyzer can still analyze breath without a printer.

We must decide whether the defendant ultimately complied with the officer's instructions that yielded blood alcohol readings (*People v. Naseef* (1984), 127 Ill. App. 3d 70, 468 N.E.2d 466), or whether the defendant circumvented the statutory requirement by refusing to cooperate to obtain test results. (*People v. Schuberth* (1983), 115 Ill. App. 3d 302, 450 N.E.2d 459.) This is the test the majority has put forth, and I wholeheartedly agree.

The test that defendant submitted to yielded blood alcohol readings. The machine's digital readout registered a .22%. Objective evidence was provided. Given a proper foundation at trial, there is no reason why the officer's report of the reading from the digital readout would not be admissible. Nothing in the statute nor case law insists that the readout be printed. Just as an officer's report of a readout from a radar gun is admissible, the digital readout from the breathalyzer should also be. While a printout would be helpful, it would not be necessary. This defendant was apparently too drunk to read the digital readout. That, in and of itself, does not render the readout inadmissible.

Finally, I do not interpret the statute as my brothers do. I do not think, as they state, that the legislature anticipated that machines would malfunction by not printing the results of the first test, and therefore used the plural of "test" to require two or more tests of one kind, if demanded. While it speaks in the plural, it is also speak-

ing of blood, breath, or urine tests. Section 11—501 proscribes driving under the influence of alcohol, drugs, or both. The implied consent statute is to provide evidence for the prosecution of those offenses, but does not require more than one of each test.

For example, assume an officer saw someone driving erratically. He then suspected that the driver was under the influence of either drugs or alcohol, but could not determine which. The officer could first require a breath test for alcohol. The officer could also require a blood or urine test for drugs. It is in this sense I believe the statute speaks when it uses the term "tests."

To carry the majority's interpretation of "tests" to the extreme, the police could constantly request defendants to submit to tests under the guise of mechanical malfunction until they obtained the desired result. This defendant was not so drunk he could not recognize the danger of repeated tests, even if he did not realize he had already "flunked" the test!

I also find it helpful that the legislature recently reduced the number of results required from a breath test from two to one. (Pub. Act. 82—311, sec. 1.) This amendment also allowed for blood and urine tests. Thus, the inescapable conclusion is that only one of each test is consented to under the statute.

For the foregoing reasons, I would affirm the circuit court of Tazewell County, and, therefore, dissent.