THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
THOMAS R. KLYCZEK, Defendant-Appellee.

Second District    No. 2—87—0023

Opinion filed November 18, 1987.

James E. Ryan, State's Attorney, of Wheaton (Judith M. Pietrucha and Barbara A. Preiner, Assistant State's Attorneys, and William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

No brief filed for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

The State appeals from the trial court's order which rescinded the summary suspension of the driver's license of the defendant, Thomas Klyczek. The trial court determined that defendant's consent to the breathalyzer testing and subsequent refusal to undergo additional testing did not warrant summary suspension under section 11—501.1 of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1). On appeal, the State contends that the plain language of the Code reveals that refusal of any chemical testing warrants suspension of driving privileges.

Initially, we note that the defendant has not provided the court with a brief on appeal. Nevertheless, we will address the issue set out by the State in accordance with *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133.

The evidence at defendant's implied consent hearing on November 1, 1986, established that Officer Summerville arrested defendant for transportation of open alcohol (Ill. Rev. Stat. 1985, ch. 95½, par. 11—502), invalid registration (Ill. Rev. Stat. 1985, ch. 95½, par. 3—701), improper lane usage (Ill. Rev. Stat. 1985, ch. 95½, par. 11—709), and driving under the influence of alcohol and/or drugs (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501). The record indicated that defendant's vehicle was observed weaving from the left lane to the curb, and defendant had a strong odor of alcohol on his breath and was unable to perform field sobriety tests. After the officer advised defendant that "refusal or failure to complete all chemical tests requested will result in suspension of your driving privileges for a minimum of six months" and issued other warnings, defendant submitted to breathalyzer testing.

The State stipulated at the hearing that defendant had agreed to breathalyzer testing. The breathalyzer test revealed an alcohol concentration of .05, which was below the legal limit of .10. The officer testified that the breathalyzer reading was accurate and conclusive.

Nevertheless, the officer requested defendant to undergo a blood or urine test, and defendant refused. Defendant's refusal constituted the basis of the summary suspension of his driving privileges.

The State argued at the hearing that the officer had discretion to request further tests in order to determine any alcohol or drug concentration in defendant's blood. The State supported its contention by referring to the language of the statute which referred to "tests" in the plural. In ruling for the defendant, the court interpreted the statute as indicating that "tests" referred to the three types: blood, urine, or breath. Because defendant did not refuse to take the breathalyzer test, which was requested of him, the court rescinded the suspension of his driver's license.

■ The State's contention on appeal is that the Code empowers the police to request a motorist to perform any combination of the three tests: urine, blood, and breath. In the officer's discretion, according to the State, individuals could be requested to perform all three tests or face suspension of their driver's license. The trial court determined that defendant's failure to undergo additional testing did not constitute refusal warranting suspension under the Code. A finding for defendant in an implied consent proceeding will be reversed on review if it is contrary to the manifest weight of the evidence. *People v. Elledge* (1986), 144 Ill. App. 3d 281, 283.

The issue presented, whether the defendant's driver's license may be suspended summarily when he refuses to submit to a test to determine the drug content of his blood or urine after he had already successfully completed a breathalyzer test, appears to be a question of first impression in Illinois. In this appeal, we are asked to interpret section 11—501.1 of the Code, which provides in relevant part:

"(a) Any person who drives *** shall be deemed to have given consent *** to a *chemical test or tests* of blood, breath, or urine for the purpose of determining the alcohol, other drug, or combination thereof content of such person's blood if arrested ***. The *test or tests* shall be administered at the direction of the arresting officer. The law enforcement agency employing said officer shall designate which of the aforesaid tests shall be administered.

　　***

(c) *** The person shall also be warned by the law enforcement officer that if the person submits to the *test or tests* provided in paragraph (a) of this Section and the alcohol concentration in such person's blood or breath is 0.10 or greater, a statutory summary suspension of such person's privilege to op-

erate a motor vehicle, as provided in Sections 6—208.1 and 11—501.1 of this Code, will be imposed.

(d) If the person refuses testing or submits to a test which discloses an alcohol concentration of 0.10 or more, the law enforcement officer shall immediately submit a sworn report to the circuit court of venue and the Secretary of State, certifying that the *test or tests* was or were requested pursuant to paragraph (a) and the person refused to submit to a *test, or tests*, or submitted to testing which disclosed an alcohol concentration of 0.10 or more." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 95½, pars. 11—501.1(a), (c), (d).

As set forth above, section 11—501.1 is not clear on its face, but susceptible to differing interpretations. The trial court, for instance, interpreted "tests" as referring to the different types available: breath, blood, or urine. This section could also mean that police are permitted to administer one blood, one urine, and one breath test, or that it may require a multiple number of blood, urine, or breath tests. While the courts have not decided the issue presented here, the court in *People v. Greenspon* (1984), 129 Ill. App. 3d 849, 852, relying on *People v. Kiss* (1984), 122 Ill. App. 3d 1056, 1059, indicated that under section 11—501.1, "a motorist is deemed to have consented to any or all of the tests which, in the discretion of the law enforcement agency, he is requested to take, and refusal to submit to any one of these tests upon request constitutes a refusal for purposes of the statute." According to this analysis, the language of the statute—"test or tests"—signifies that an officer may request more than one test from a motorist. This interpretation is also consistent with the statutory purpose of deterring drinkers from driving by compelling them to submit to chemical tests to obtain evidence of intoxication while preserving their due process rights. *Kiss*, 122 Ill. App. 3d at 1059.

In our opinion, multiple testing is not always proper. In *People v. Cofer* (1985), 135 Ill. App. 3d 283, a defendant consented to take a breathalyzer test but refused to repeat the test when the printer malfunctioned. In this circumstance, the court determined that the defendant's refusal to perform the test a second time warranted suspension of his license. The court interpreted section 11—501.1 as contemplating retesting by its language, "test or tests." (*People v. Cofer* (1985), 135 Ill. App. 3d 283, 286.) The court explained, however, that "[w]e neither suggest that multiple analyses are always appropriate, nor do we encourage arbitrary attempts to whittle away a defendant's due process rights." *People v. Cofer* (1985), 135 Ill. App. 3d 283, 286.

The State relies on the dissenting opinion in *People v. Cofer*

(1985), 135 Ill. App. 3d 283, 286 (Wombacher, J., dissenting). The dissent agreed with the majority's outcome but opined that the first test given was valid even though the printer was not working, as it showed an alcohol concentration of .22. According to the dissent, however, the words "test or tests" did not encompass a retesting situation but meant a police officer could first require a breath test for alcohol and then require a blood or urine test for drugs. (*People v. Cofer* (1985), 135 Ill. App. 3d 283, 286.) We agree and conclude that under certain circumstances refusal to submit to multiple testing warrants suspension of a motorist's driver's license.

Similarly, our view is supported by the holding in *Commonwealth v. McFarren* (1987), 514 Pa. 411, 417-18, 525 A.2d 1185, 1188 (plurality opinion). In *McFarren*, the court interpreted its implied consent statute (75 Pa. Cons. Stat. §1547(a) (1982)). Section 1547(a) of the Motor Vehicle Code stated in relevant part that "[a]ny person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance." (75 Pa. Cons. Stat. §1547(a) (1982).) While the court interpreted the statute as allowing multiple testing, the court held that a second chemical test of blood for alcohol may be proper if the first test was inconclusive due to faulty equipment or faulty performance by an individual, including the situation in which the individual fails to participate fully in a breathalyzer test. However, a police officer's request that a motorist submit to a second blood-alcohol test to substantiate the accuracy of the first test is unreasonable under the constitution, which prohibits unreasonable searches and seizures. Thus, a motorist who provided a first test could not be deemed to have refused to submit to testing, and his license could not be suspended on the basis of his refusal to submit to the second test. The same result occurred in *Commonwealth v. Fellmeth* (Pa. Commw. Ct. 1987), 528 A.2d 1090. In *Fellmeth*, where the first breathalyzer test was deemed valid, defendant's failure to submit to a second test was not in violation of Pennsylvania's implied consent statute. In order for a second test to be requested, the police officer must establish circumstances which support the reasonableness of his second search. *Fellmeth*, 528 A.2d at 1092.

■ In this case, the validity of the first test is not in question. The police officer testified that the test was accurate. The result of such test indicated that defendant was presumed not to be under the influence of alcohol. The officer then had to present reasonable evi-

dence for requesting a second test. At the hearing, the State argued that the officer requested further testing to determine whether there was any drug concentration in defendant's blood. The test was not requested merely to confirm defendant's alcohol level. Therefore, the second test in this case was reasonable, and the defendant's refusal to perform that test warrants suspension of his driver's license.

For the foregoing reasons, we reverse the decision of the trial court to rescind the suspension of defendant's driver's license, and the cause is remanded for further proceedings consistent with this decision.

Reversed and remanded.

NASH and INGLIS, JJ., concur.