THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LISA FORTNEY, Defendant-Appellant.

Second District   No. 2—97—0746

Opinion filed June 1, 1998.

80

Rachel J. Hess, of Schaffner & Van Der Snick, P.C., of Geneva, for appellant.

David R. Akemann, State's Attorney, of St. Charles (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and William R. Brandstrader, of Prospect Heights, for the People.

JUSTICE COLWELL delivered the opinion of the court:

Defendant, Lisa Fortney, appeals from an order of the circuit court of Kane County denying her petition to rescind a statutory summary suspension of her driver's license (see 625 ILCS 5/2—118.1(b) (West 1996)). We affirm.

On appeal, defendant contends that (1) the trial court erroneously determined the time of her arrest for driving under the influence; (2) the arresting officer lacked reasonable grounds to arrest her for driving under the influence; (3) her breathalyzer test results did not indicate a blood-alcohol concentration of 0.10 or more; and (4) the trial court erroneously allowed the State to introduce hearsay testimony.

## FACTS

On May 4, 1997, at approximately 8:57 p.m., Sergeant Timothy Baker of the Geneva police department was patrolling in the 200 block of west State Street in Geneva when he received a radio dispatch reporting that a red Chevy Blazer was ramming a house containing occupants in the 500 block of Edison Street. In response, Sergeant Baker activated his squad car's flashing overhead lights and headlights, proceeded west on State Street, and then turned north on Sixth Street where he observed defendant's vehicle, which matched the suspected vehicle's description, traveling south in the 0-to-99 block of north Sixth Street. Sergeant Baker did not notice defendant driving erratically.

Sergeant Baker described the area as containing a liquor store parking lot on the east side of the street and a driveway entrance to a parking lot for an Ace Hardware and an L-shaped strip mall on the west side of the street. A White Hen Pantry convenience store was located at the opposite (south) end of the strip mall away from the Ace Hardware.

Upon observing defendant's vehicle, Sergeant Baker positioned his squad car in the southbound lane on Sixth Street so that defendant would stop her vehicle in the roadway. Instead, defendant turned right

into the Ace Hardware parking lot and yelled at Sergeant Baker: "I didn't f--king do anything, leave me alone." Sergeant Baker activated his siren and followed defendant into the parking lot. Defendant stopped about 30 seconds later in front of the White Hen Pantry.

Once defendant stopped her vehicle, Sergeant Baker exited his squad car, drew his gun, and ordered defendant to stay in her car and put her hands on her head. Sergeant Baker testified that defendant continued yelling obscenities at him and would not keep her hands above her head. Sergeant Baker also ordered defendant out of her vehicle. Defendant, on the other hand, testified that she was telling the police that she did not have a gun and that she could not keep her hands above her head and exit her vehicle since she needed to push a release button on her prosthetic leg in order to exit the vehicle.

Sergeant Baker observed that defendant was crying but denied that she was hysterical. Sergeant Baker testified that at this time he did not tell defendant she was under arrest but stated that she was probably under arrest.

Within a minute after defendant stopped, other officers responding to the radio dispatch arrived on the scene. Officer Paul Van Dorn was the second officer on the scene. When Officer Van Dorn arrived, he observed Sergeant Baker with his gun drawn ordering defendant to keep her hands where he could see them. Officer Van Dorn then drew his weapon on defendant and maintained cover behind his squad car. Officer Van Dorn observed defendant exit and move to the back of her vehicle, stop, and fall back against the back of her vehicle. Defendant denied falling back.

Another officer placed defendant in handcuffs, and Sergeant Baker assigned Officer Van Dorn to be the arresting officer. While she was trying to enter the rear seat of Officer Van Dorn's squad car, defendant informed Officer Van Dorn and Sergeant Baker that she had a prosthetic leg. Defendant also told Sergeant Baker that her boyfriend had thrown her into some bushes.

Officer Van Dorn and Sergeant Baker testified that they arrested defendant for reckless conduct. Officer Van Dorn further testified that he did not perform any field sobriety tests on defendant at the scene and that he did not have an opportunity to observe defendant at the scene to determine whether she was intoxicated.

While Officer Van Dorn transported defendant to the police station, he noticed that defendant had a very runny nose and watery, glassy eyes, and he smelled a very strong odor of alcohol on her breath. At the police station, Officer Van Dorn asked defendant if she had been drinking and she responded affirmatively. Defendant told Officer Van Dorn that, earlier in the evening, she had three or four glasses of champagne.

Officer Van Dorn testified that he read defendant the statutory warning to motorists at 10:31 p.m. and asked her if she would take a breathalyzer test, to which she agreed. Officer Van Dorn then observed defendant for a 20-minute period before administering the breathalyzer test at 10:54 p.m. The machine printed out a ticket; Officer Van Dorn initialed the ticket and gave defendant a copy of the ticket while retaining the other two copies. Officer Van Dorn then entered defendant's blood-alcohol concentration into a logbook. Officer Van Dorn testified that the digital readout on the breathalyzer machine, the ticket, and the logbook entry all indicated that defendant's blood-alcohol concentration was .11. The trial court did not allow the State to enter the breathalyzer ticket or the logbook into evidence.

Officer Van Dorn further testified that he is trained in operating a breathalyzer machine and that the breathalyzer machine used to measure defendant's blood-alcohol concentration had been certified by the Illinois Department of Public Health within 45 days prior and subsequent to the test. Officer Van Dorn denied that there were any problems with the machine on the night he tested defendant.

Officer Van Dorn also testified that defendant was arrested at the police station for driving under the influence. He could not recall an exact time but stated that he arrested defendant after he conducted a field sobriety test and spoke with her for a little while. Officer Van Dorn did not testify as to which field sobriety test or tests defendant performed or which test or tests defendant failed. Officer Van Dorn then stated that defendant was arrested for the first part of driving under the influence before the breathalyzer test.

Defendant testified that on the night in question she and her boyfriend got into a fight at his house on Edison Street and he threw her into the bushes. She was scared, crying, and upset. Defendant described her boyfriend as a 400-pound bodybuilder. Defendant got into her car to go to the White Hen Pantry to call the police since that was the only phone she knew of in the area that was available.

Defendant drove across the Ace Hardware parking lot and stopped in front of the White Hen Pantry. While she noticed a police car with its lights activated, she could not recall whether the police car was in the roadway or behind her.

At the White Hen Pantry, the police were screaming at her and they all had their guns drawn. She was trying to put her hands up, but she needed to use her hand to get her prosthetic leg out of the car. They then handcuffed her and took her to the police station. She testified that at this time nobody told her that she was under arrest but she guessed that she was under arrest.

Defendant admitted that she agreed to take a breathalyzer test,

and, when asked whether she felt she was under the influence of alcohol at the time of the test, she responded: "Not really." Defendant then also admitted that she told Officer Van Dorn that she had three or four glasses of champagne. Defense counsel then asked defendant: "When you took the breath test then did you feel that you were going to be arrested or that you were over .10, that you are [sic] under the influence?" Defendant responded: "No, I did not."

On cross-examination, defendant stated that she had the three or four glasses of champagne 45 to 60 minutes prior during a wedding dinner of prime rib and vegetables.

The police issued defendant citations for reckless driving in violation of section 11—503 of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11—503 (West 1996)); reckless conduct in violation of section 12—5(a) of the Criminal Code of 1961 (720 ILCS 5/12—5(a) (West 1996)); squealing tires in violation of section 11—505 of the Vehicle Code (625 ILCS 5/11—505 (West 1996)); driving under the influence in violation of section 11—501(a)(2) of the Vehicle Code (625 ILCS 5/11—501(a)(2) (West 1996)); and driving with an alcohol concentration in her blood or breath in excess of 0.10 in violation of section 11—501(a)(1) of the Vehicle Code (625 ILCS 5/11—501(a)(1) (West 1996)). The traffic citation for the offense of squealing tires indicates that the offense occurred at 8:56 p.m. The citations for the offenses of driving under the influence indicate that those offenses occurred at 8:59 p.m. The citations for the reckless driving and reckless conduct charges do not indicate when those offenses occurred.

Officer Van Dorn's sworn report indicates that the police arrested defendant for the driving-under-the-influence offenses at 9:01 p.m. and that the police administered the breathalyzer test at 10:55 p.m. Officer Van Dorn's sworn report also indicates that, while speaking with defendant, Officer Van Dorn observed defendant had bloodshot, glassy eyes, and he detected the odor of an alcoholic beverage. The sworn report further indicates that defendant failed field sobriety tests. The warning-to-motorists report indicates that the police gave defendant her statutory warning at 10:25 p.m.

As a result of her blood-alcohol concentration of 0.11, the police served defendant with a notice of a summary suspension of driving privileges (see 625 ILCS 5/11—501.1 (West 1996)). The circuit court sustained the summary suspension on June 18, 1997. On May 16, 1997, defendant filed a petition to rescind the summary suspension, contending that (1) the arresting officer lacked reasonable grounds to believe that she was under the influence of alcohol; (2) the arresting officer did not properly warn her; and (3) the breathalyzer test did not indicate a blood-alcohol concentration of 0.10 or more. Defendant later

waived her second contention, and the circuit court denied her petition on June 18, 1997. Defendant filed a timely notice of appeal.

## STANDARD OF REVIEW

■ In a statutory summary suspension rescission proceeding, the defendant may raise four grounds for rescission: (1) whether the defendant was placed under arrest for an offense under section 11—501 (625 ILCS 5/11—501 (West 1996)); (2) whether the officer had reasonable grounds to believe that the defendant was driving under the influence of alcohol; (3) whether the defendant received the statutory motorist's warning and refused to complete the test or tests; and (4) whether the test disclosed an alcohol concentration of 0.10 or more. 625 ILCS 5/2—118.1(b)(1) through (b)(4) (West 1996). The motorist has the burden of proving one or more of the statutory grounds for rescission, and the trial court's decision will not be reversed unless it is against the manifest weight of the evidence. *City of Highland Park v. Didenko*, 274 Ill. App. 3d 24, 25 (1995).

## ANALYSIS

## I. TIME OF ARREST

■ We first determine when the police arrested defendant for driving with a blood-alcohol concentration in excess of 0.10 (625 ILCS 5/11—501(a)(1) (West 1996)) and for driving under the influence of alcohol (625 ILCS 5/11—501(a)(2) (West 1996)). The trial court's determination as to whether and when an arrest has taken place will not be reversed on review unless it is against the manifest weight of the evidence. *People v. Lewallen*, 247 Ill. App. 3d 350, 354 (1993).

Defendant contends that the police arrested her for both offenses at 9:01 p.m., as evidenced by Officer Van Dorn's sworn report. The State, on the other hand, contends that the police arrested defendant for both offenses at the police station and that the police arrested defendant at the scene only for reckless conduct. The trial court agreed with the State. We, likewise, agree with the State.

■ Officer Van Dorn's sworn report is not conclusive in determining when the arrest occurred. In addition to being the jurisdictional step which starts the proceeding (see 625 ILCS 5/11—501.1(d), (f), 2—118.1(a) (West 1996)), the sworn report is also evidence in the case (see 625 ILCS 5/2—118.1(b) (West 1996) (stating the hearing may be conducted upon a review of the officer's sworn report)), and the trial court may rely on the officer's official reports (*People v. Gafford*, 218 Ill. App. 3d 492, 498 (1991)). Accordingly, any conflicts between Officer Van Dorn's sworn report and his testimony during the rescission hearing affect his credibility and the weight of the evidence, and it is the

function of the trial court to determine the credibility of the witnesses, weigh the evidence, and resolve conflicts in the evidence. *People v. Posedel*, 214 Ill. App. 3d 170, 180 (1991).

■ Moreover, the standard for determining if and when an arrest has occurred is whether a reasonable person, innocent of any crime, would have felt restrained from leaving considering the surrounding circumstances. *People v. Gamblin*, 251 Ill. App. 3d 769, 771 (1993). Besides the sworn report, factors to consider when determining if and when a suspect has been arrested for driving under the influence are (1) the issuance of a citation; (2) the administration of field sobriety tests; (3) the transportation to a police station (*Gamblin*, 251 Ill. App. 3d at 771); (4) the police officer's continuing possession of an individual's driver's license; (5) the handcuffing of the individual or the placing of the individual into a squad car (*Lewallen*, 247 Ill. App. 3d at 354); and (6) the duration of the individual's detention (*People v. Wozniak*, 199 Ill. App. 3d 1088, 1092 (1990)). No formal declaration of arrest is necessary for an arrest to occur. *People v. Bahnfleth*, 233 Ill. App. 3d 289, 292 (1992).

In *People v. Jones*, 198 Ill. App. 3d 572 (1990), the court noted that the issuance of a traffic ticket or the time mentioned in a police report is not conclusive evidence of an arrest. The court then found that the defendant was under arrest when the police officer seized the defendant's keys, license, and registration and transported the defendant to the police station even though the citation and the police report indicated that the arrest occurred after the defendant refused to submit to a breathalyzer test.

■ In this case, both Sergeant Baker and Officer Van Dorn testified that they arrested defendant at the scene for reckless conduct. In addition, defendant testified that she believed that she was under arrest at the scene when she was handcuffed and placed into Officer Van Dorn's squad car, even though no one told her that she was under arrest at that time.

Officer Van Dorn did not begin investigating the possible driving-under-the-influence offenses until they arrived at the police station. While transporting defendant to the police station, Officer Van Dorn noticed her runny nose and glassy, watery, bloodshot eyes and that her breath smelled strongly of alcohol. At the police station, Officer Van Dorn asked defendant if she had been drinking, and defendant admitted drinking three or four glasses of champagne. After speaking with defendant for awhile and after defendant failed a sobriety test, Officer Van Dorn read her the statutory warning and asked if she would take a breathalyzer, to which she agreed.

Based on these facts, many of the typical factors demonstrating

when an arrest occurred are inapplicable because, at the time Officer Van Dorn took defendant into custody, she was only under arrest for reckless conduct. For instance, when the police handcuffed defendant, placed her into a squad car, and transported her to a police station, she was only under arrest for reckless conduct.

In addition, while we know defendant relinquished her driver's license by its presence in the record, there is no testimony in the record concerning when she relinquished her driver's license. Similarly, while we know the police issued defendant two citations for driving under the influence, we do not know when they issued those citations. Likewise, we do not know whether the length of defendant's detention prior to the breathalyzer test was related to her reckless conduct or Officer Van Dorn's investigation of her intoxication level.

All we know for certain is that Officer Van Dorn's sworn report indicates that defendant was arrested for the driving-under-the-influence offenses at 9:01 p.m. and that Officer Van Dorn testified that defendant was arrested at the police station after she failed a field sobriety test. Officer Van Dorn also testified that defendant was under arrest for the first part of her driving-under-the-influence citations prior to taking the breathalyzer test. Officer Van Dorn must have been referring to the driving-under-the-influence section 11—501(a)(2) offense since defendant's blood-alcohol concentration had not been determined until after she took the breathalyzer test. As previously stated, it is the trial court's function to determine the witnesses' credibility, to weigh the evidence, and to resolve any conflicts in the testimony. *Posedel*, 214 Ill. App. 3d at 180. In addition, it was defendant's burden of proof on this issue. Accordingly, we cannot say that the trial court's determination that the arrest occurred at the police station was against the manifest weight of the evidence.

## II. REASONABLE GROUNDS FOR ARREST

■ We next address defendant's argument as to whether the police had reasonable grounds to believe defendant was driving under the influence of alcohol at the time of arrest. "Reasonable grounds" is synonymous with "probable cause" in a driving-under-the-influence situation. *People v. Brodeur*, 189 Ill. App. 3d 936, 940 (1989). To determine whether reasonable grounds/probable cause existed, the trial court must determine whether a reasonable and prudent person, having the knowledge possessed by the officer at the time of the arrest, would believe the defendant committed the offense. *Brodeur*, 189 Ill. App. 3d at 940.

■ In the present case, Officer Van Dorn observed defendant fall against the back of her vehicle when she first exited her vehicle. He

later observed her runny nose and watery, glassy, bloodshot eyes, and he smelled a very strong odor of alcohol on her breath. After learning that defendant had earlier consumed three or four glasses of champagne, Officer Van Dorn administered a field sobriety test, which defendant failed. Officer Van Dorn further spoke with defendant and observed her for 20 minutes prior to administering a breathalyzer test. Under the totality of these circumstances, we believe Officer Van Dorn had probable cause to believe defendant had driven her vehicle under the influence of alcohol.

## III. BREATHALYZER TEST ACCURACY

We also address defendant's argument that she presented a *prima facie* case based on an inaccurate breathalyzer test. Defendant contends that her testimony shifted the burden to the State to prove the accuracy of the breathalyzer test. We disagree.

■ The burden is initially placed upon the motorist to make a *prima facie* case that the breathalyzer test did not disclose a blood-alcohol concentration of 0.10 or more, or that the test result did not accurately reflect his or her blood-alcohol concentration. *People v. Orth*, 124 Ill. 2d 326, 338, 340 (1988). A *prima facie* case for rescission "may consist of any circumstance which tends to cast doubt on the test's accuracy, including, but not limited to, credible testimony by the motorist that he was not in fact under the influence of alcohol." *Orth*, 124 Ill. 2d at 341. If the motorist makes a *prima facie* case, the burden shifts to the State to come forward with evidence justifying the suspension. *Orth*, 124 Ill. 2d at 338. Additionally, the State can avoid rescission only by moving for the admission of the test into evidence and laying the proper foundation. *Orth*, 124 Ill. 2d at 340. The trial court's determination of a *prima facie* case will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Orth*, 124 Ill. 2d at 341.

■ In this case, defendant's testimony regarding her level of intoxication was equivocal. When asked by defense counsel whether she felt she was under the influence of alcohol at the time of the breathalyzer test, she responded: "Not really." Defense counsel then asked: "When you took the breath test then did you feel that you were going to be arrested or that you were over .10, that you are [*sic*] under the influence?" Defendant responded: "No, I did not."

Defendant's response to the first question was not definitive and even suggests that defendant knew she was under the influence of alcohol to some degree. In addition, even though defendant's answer to the second question was definitive, because defense counsel's second question was asked in the conjunctive, we do not know whether defen-

dant was answering the first or second part of the question. Furthermore, in light of the two questions taken together, defendant's answers were in conflict. Thus, we may assume that, based upon the trial court's ruling, the trial court did not find defendant's testimony credible.

If the motorist is relying upon his or her own testimony, the trial court must first find the motorist's testimony credible before the burden shifts to the State. *People v. Kuntz*, 239 Ill. App. 3d 587, 591 (1993). Where the trial court's findings are based on the credibility of the witnesses, we may not substitute our judgment for that of the court. *Kuntz*, 239 Ill. App. 3d at 591. Accordingly, the trial court's ruling was not against the manifest weight of the evidence.

We also find defendant's case law factually distinguishable. In *People v. Culpepper*, 254 Ill. App. 3d 215 (1993), the trial court found that the defendant made a *prima facie* case after she testified that she had consumed only 1½ drinks during a 2½-hour period prior to an accident in which she was knocked unconscious for one hour. In this case, however, the trial court did not find in defendant's favor, and defendant consumed three or four glasses of champagne in a 45- to 60-minute period.

In *Kuntz*, 239 Ill. App. 3d 587, the defendant testified that he drank two beers and a couple of sips of vodka during a nearly nine-hour period, that he successfully completed one field sobriety test, and that he was unable to perform the one-leg stand test because of weakness in his ankles. The defendant also definitively denied that he was under the influence of alcohol. Additionally, the trial court found the defendant presented a *prima facie* case for rescission. In contrast, here, defendant drank more alcohol during a shorter period of time, failed her field sobriety test without testifying as to an excuse, equivocally denied being under the influence of alcohol, and the trial court did not find in her favor.

In *People v. Bavas*, 251 Ill. App. 3d 720 (1993), the defendant testified that he had not violated any traffic laws, was doing nothing unusual at the time he was stopped, had only two beers during a four-hour period, was not intoxicated, and the arresting officer did not read him the warning to motorists. In addition, the defendant's testimony was corroborated. Conversely, in the present case, defendant violated the law against reckless conduct, drank more alcohol during a shorter period of time, equivocally denied being under the influence of alcohol, did not dispute that she was read the statutory warning, and her testimony was not corroborated.

Finally, in *People v. Tucker*, 245 Ill. App. 3d 161 (1993), the defendant testified extensively as to the details of his driving behavior.

Conversely, in this case, defendant never testified regarding her driving behavior.

## IV. HEARSAY TESTIMONY

■ Finally, we address defendant's argument that the trial court erroneously allowed the State to present hearsay testimony. Defendant complains that Officer Van Dorn testified to what Sergeant Baker told him regarding his observations of defendant while driving her vehicle. Defendant claims this fact goes to the essence of her driving-under-the-influence offenses and does not fall into a hearsay exception.

First, we note that defendant does not explain how she was prejudiced by this testimony. It is undisputed that defendant was driving her vehicle, and Officer Van Dorn did not rely on defendant's driving ability when arresting her for driving under the influence. In addition, a police officer may have probable cause to arrest a defendant for driving under the influence without actually observing the defendant driving (see *People v. Wolsk*, 118 Ill. App. 3d 112 (1983)), and a police officer acting in concert with another police officer may rely on the other police officer's knowledge (see *People v. Eyler*, 132 Ill. App. 3d 792 (1985)). Thus, we reject this argument and find no error.

## CONCLUSION

Based upon the foregoing, we find that the judgment of the circuit court of Kane County was not against the manifest weight of the evidence.

Affirmed.

DOYLE and THOMAS, JJ., concur.