# Illinois Official Reports

## Appellate Court

---

### *People v. Durden*, 2017 IL App (3d) 160409

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TURMOND D. DURDEN, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-16-0409 |
| Filed | November 1, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Will County, Nos. 16-TR-23303, 16-DT-465; the Hon. Arkadiusz Z. Smigielski, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Christopher S. Carroll, of Aurora, for appellant.<br><br>James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, Lawrence M. Bauer, and Richard T. Leonard, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE LYTTON delivered the judgment of the court, with opinion. Presiding Justice Holdridge and Justice Schmidt concurred in the judgment and opinion. |

**OPINION**

¶ 1        Defendant, Turmond D. Durden, was pulled over by a Village of Shorewood police officer. After failing field sobriety tests, defendant was arrested for driving under the influence (DUI) and transported to the police station. At the station, an officer read defendant the "Warning to Motorist," and defendant submitted to a breathalyzer test showing his blood alcohol content was within the legal limit. After that, an officer requested that defendant submit to blood or urine testing. Defendant refused, and his driver's license was summarily suspended. Defendant filed a petition to rescind his statutory summary suspension. The trial court denied defendant's petition. Defendant appeals, arguing that his petition to rescind should have been granted because the officers (1) lacked reasonable suspicion to request blood or urine testing and (2) failed to issue him a second warning before requesting blood or urine testing. We affirm.

¶ 2                                                              FACTS

¶ 3        Defendant was arrested and charged with DUI (625 ILCS 5/11-501 (West 2016)) on April 4, 2016. After refusing to submit to blood or urine testing, defendant's driver's license was summarily suspended (625 ILCS 5/11-501.1 (West 2016)). Defendant filed a petition to rescind his statutory summary suspension. A hearing was held on the petition.

¶ 4        At the hearing, Officer Brett Middleton of the Shorewood police department testified that he was on patrol at approximately 1:12 a.m. on April 4, 2016, when he observed defendant commit "[m]ultiple lane violations." According to Middleton, defendant's vehicle veered toward his patrol car, crossed over the double yellow line three times, veered into the painted median twice, and "began to veer towards the opposite lane of traffic." After observing defendant commit "approximately five lane violations," Middleton activated his overhead lights.

¶ 5        Defendant stopped his vehicle, and Middleton approached and asked for defendant's driver's license. In attempting to retrieve his license, defendant's "hands slipped off his wallet numerous times" and before handing the license to Middleton, defendant dropped it in his lap. Defendant also dropped his cell phone in his lap. Middleton asked defendant if he had consumed any alcoholic beverages or was on any medication. Defendant denied both.

¶ 6        Middleton returned to defendant's vehicle and asked him to step out of the car. At that time, Middleton smelled a "moderate" odor of an alcoholic beverage. Middleton also observed that defendant had "slurred speech, glossy, bloodshot eyes" and "unusual behavior."

¶ 7        Middleton requested that defendant perform three field sobriety tests: horizontal gaze nystagmus, walk and turn, and one leg stand. Defendant did not properly perform any of the tests and demonstrated "an inability to follow instructions." Middleton then asked defendant to submit to a portable breathalyzer test. Defendant refused, and Middleton arrested defendant for DUI. Middleton determined, based on defendant's "slurred speech, *** very dangerous driving, [and] performance on the field sobriety tests," that defendant "was impaired and not safe to operate a motor vehicle." After placing defendant under arrest, Middleton transported defendant to the Shorewood police department.

¶ 8        At the police station, at 2:07 a.m., Middleton read to defendant the "Warning to Motorist," which explained the consequences of taking or refusing to take a chemical test for intoxication. The written form, signed by Middleton, was admitted into evidence at the hearing. While

waiting to take the breathalyzer test, defendant stated something like "that Dayquil will mess you up." Middleton testified that defendant made "other unusual statements" to him.

¶ 9 At 2:30 a.m., Officer Ryan Schloesser of the Shorewood police department administered a breath test to defendant. At 2:43 a.m., Schloesser received the test results, which showed that defendant had a blood alcohol level of 0.035, which is well below the legal limit of 0.08. Schloesser then asked defendant for a blood or urine sample, which defendant refused to give.

¶ 10 At the hearing, Schloesser testified that he asked defendant to submit to blood or urine testing because, based on his interactions with defendant, defendant's blood alcohol level of 0.035 "didn't appear to me to be the whole cause of how he had been acting." Schloesser admitted that he asked for a blood sample from defendant based on his statement that he used Dayquil. Schloesser testified that he was familiar with Dayquil and found nothing in Dayquil's warnings restricting one's ability to drive or operate machinery. Schloesser did not read the "Warning to Motorist" to defendant before requesting a blood or urine sample from him.

¶ 11 The trial court denied defendant's petition to rescind, finding that "the officer did have reasonable grounds to believe that the defendant was driving *** a motor vehicle while under the influence of alcohol or drugs" based on "[t]he defendant's driving" and "a moderate odor of alcohol." The court further found that providing one "Warning to Motorist" was sufficient. Defendant filed a motion to reconsider, which the trial court denied.

¶ 12 ANALYSIS

¶ 13 I

¶ 14 Defendant argues that the trial court should have granted his petition to rescind because the officers lacked reasonable suspicion to support their request for blood or urine testing after his breath test showed that his blood alcohol level was less than the legal limit.

¶ 15 Section 2-118.1 of the Illinois Vehicle Code (Code) (625 ILCS 5/2-118.1 (West 2016)) provides that when a person receives notice of a summary suspension of his driver's license pursuant to section 11-501.1 of the Code (625 ILCS 5/11-501.1 (West 2016)), he may request a hearing to rescind the statutory summary suspension. When a defendant files a petition to rescind statutory summary suspension of his driver's license, the burden of proof is on the defendant. *People v. Joiner*, 174 Ill. App. 3d 927, 928-29 (1988).

¶ 16 A defendant alleging that an arresting officer did not have reasonable grounds to believe that he was driving under the influence bears the burden to produce *prima facie* evidence that the officer lacked reasonable grounds. *People v. Davis*, 2012 IL App (2d) 110581, ¶ 47. "When determining whether reasonable grounds existed for an arrest, courts employ the probable cause analysis derived from the fourth amendment." *Id.* ¶ 48.

¶ 17 "Probable cause is not guilt beyond a reasonable doubt." *Id.* ¶ 50. "[P]robable cause deals with probabilities and involves 'factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " *Id.* (quoting *People v. Jackson*, 232 Ill. 2d 246, 275 (2009)). "[T]he existence of probable cause depends upon the totality of the circumstances at the time of the arrest." *People v. Wear*, 229 Ill. 2d 545, 564 (2008). "When officers are working in concert, probable cause can be established from all the information collectively received by the officers even if that information is not specifically known to the officer who makes the arrest." *People v. Bascom*, 286 Ill. App. 3d 124, 127 (1997).

¶ 18    "Erratic driving, such as crossing the center line, is sufficient to justify an investigatory stop." *People v. Goestenkors*, 278 Ill. App. 3d 144, 149 (1996). Additionally, slurred speech, red and glassy eyes, the odor of an alcoholic beverage, difficulty producing documents, and failed field sobriety tests "have repeatedly been held to be indicia of intoxication adequate to support an arrest for driving under the influence of alcohol." *Id.* at 150; see also *People v. Fortney*, 297 Ill. App. 3d 79, 87-88 (1998) (glassy, bloodshot eyes, strong odor of alcohol, and failed field sobriety test were reasonable grounds for arrest); *People v. Crocker*, 267 Ill. App. 3d 343, 346 (1994) (slurred speech, odor of alcohol, and two failed field sobriety test created probable cause for arrest).

¶ 19    Once an officer has probable cause to arrest a driver for DUI, the officer may request "a chemical test or tests of blood, breath, or urine for the purpose of determining the content of alcohol, other drug or drugs, or intoxicating compound or compounds or any combination thereof in the person's blood." 625 ILCS 5/11-501.1(a) (West 2016); *People v. Kirk*, 291 Ill. App. 3d 610, 615 (1997). "[M]ultiple testing is not always proper." *People v. Klyczek*, 162 Ill. App. 3d 557, 560 (1987). However, "a police officer can first require a breath test for alcohol and then require a blood or urine test for drugs." *People v. Krosse*, 262 Ill. App. 3d 509, 511 (1994).

¶ 20    When a defendant submits to one test and the results indicate that defendant is not under the influence of alcohol, the officer must "present reasonable evidence for requesting a second test." *Klyczek*, 162 Ill. App. 3d at 561-62; see also *Kirk*, 291 Ill. App. 3d at 617 (officers requesting additional chemical tests are "required to show that their request for additional tests was for some reasonable purpose and not merely to get evidence of a higher BAC [blood alcohol concentration]"). Where an officer requests further testing to determine whether there are drugs in defendant's system, the second test is "reasonable, and the defendant's refusal to perform that test warrants suspension of his driver's license." *Klyczek*, 162 Ill. App. 3d at 562; see also *Krosse*, 262 Ill. App. 3d at 512 (officer's request for blood test after breath test showed low blood alcohol level was proper where officer suspected defendant might be under the influence of drugs based on his speech and unusual behavior).

¶ 21    Here, Officer Middleton pulled over defendant because of erratic driving. After speaking to defendant, Middleton noticed that defendant had glossy eyes, slurred speech, and difficulty handling small objects, such as his cell phone and driver's license. Middleton had defendant perform three field sobriety tests, which defendant failed because he could not follow instructions. These observations were sufficient to justify defendant's arrest for DUI. See *Goestenkors*, 278 Ill. App. 3d at 149-50.

¶ 22    When the results of defendant's breath test showed that defendant's blood alcohol concentration was less than 0.05, defendant was presumed not to be under the influence of alcohol. See 625 ILCS 5/11-501.2(b)(1) (West 2016). However, Officer Schloesser asked defendant to submit to further testing by providing a blood or urine specimen test because, based on his interactions with defendant, defendant's blood alcohol level of 0.035 "didn't appear to *** be the whole cause of how he had been acting."

¶ 23    Defendant argues that Schloesser's sole basis for requesting further testing was his admission that he took Dayquil. However, the record does not support this contention. As set forth above, Schloesser testified that he requested defendant's blood or urine because defendant's actions were inconsistent with his low blood alcohol concentration. Middleton also testified that defendant made "unusual statements" and exhibited "unusual behavior,"

supporting the request for additional testing. See *Bascom*, 286 Ill. App. 3d at 127 (probable cause can be established from all information collectively received by all officers). Because the officers found defendant's actions and behavior inconsistent with his blood alcohol level, it was reasonable for Schloesser to request that defendant undergo further testing to determine if he was under the influence of drugs. See *Krosse*, 262 Ill. App. 3d at 511; *Klyczek*, 162 Ill. App. 3d at 562.

¶ 24                                    II

¶ 25    Defendant further argues that his petition to rescind should have been granted because Officer Schloesser did not issue him a "Warning to Motorist" before asking him to submit to a blood or urine test.

¶ 26    Pursuant to section 11-501.1 of the Code, a person who is requested to submit to chemical tests of blood, breath, or urine for the purpose of determining the content of alcohol or other drugs in the person's blood "shall be warned by the law enforcement officer requesting the test that a refusal to submit to the test will result in the statutory summary suspension of the person's privilege to operate a motor vehicle." 625 ILCS 5/11-501.1(c) (West 2016). To satisfy this requirement, there should be testimony that an officer read the "Warning to Motorist" to the defendant and introduced the form into evidence at the rescission hearing. *In re Summary Suspension of Driver's License of Trainor*, 156 Ill. App. 3d 918, 925 (1987). An officer's failure to give the required warnings is a ground for rescission of the suspension. *City of Highland Park v. Didenko*, 274 Ill. App. 3d 24, 26 (1995).

¶ 27    Here, Officer Middleton read defendant the "Warning to Motorist" at 2:07 a.m., before requesting that he submit to a breath test. Officer Schloesser did not repeat the "Warning to Motorist" to defendant before requesting that he submit to a blood or urine test at 2:43 a.m.

¶ 28    Nothing in the Code requires that officers provide the "Warning to Motorist" more than once if more than one test is requested. Nor have we found any Illinois case law interpreting the Code in such a way. Thus, we look to other states for guidance on this issue. See *In re L.F.*, 306 Ill. App. 3d 748, 753 (1999).

¶ 29    In a case similar to this one where a defendant's license was revoked following his refusal to submit to a blood test after he passed a breath test, an Oklahoma appellate court rejected the defendant's contention that officers had to readvise him of the provisions of the implied consent law before asking him to submit to the blood test. See *Burris v. State ex rel. Department of Public Safety*, 785 P.2d 332, 334 (Okla. Civ. App. 1989). The court explained that revocation of a driver's license is civil, not criminal, in nature and due process rights are built into the regulatory procedures for revocation of driver's licenses. *Id.* The court stated: "Where, as here, the Appellant's rights are protected by due process safeguards within the regulations, and the second test was requested within two hours of the arrest, no second warning was necessary." *Id.*

¶ 30    Likewise, in Illinois, rescission proceedings are civil and administrative in nature with due process safeguards in place. *Haswell v. Powell*, 38 Ill. 2d 161, 164 (1967). Additionally, like the defendant in *Burris*, defendant here was asked to submit to blood or urine testing soon after he was provided the "Warning to Motorist." It was not necessary for Schloesser to provide defendant with new warnings less than an hour after defendant received the initial "Warning to Motorist." See *Burris*, 785 P.2d at 334. The trial court properly denied defendant's petition to

rescind.

¶ 31                                  CONCLUSION
¶ 32            The judgment of the circuit court of Will County is affirmed.

¶ 33            Affirmed.