**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2019 IL App (3d) 180443-U

Order filed December 17, 2019

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2019

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0443 Circuit No. 18-DT-669 |
| MICHAEL A. GORDON, | ) ) ) | Honorable Theodore J. Jarz, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE WRIGHT delivered the judgment of the court.
Justices Holdridge and McDade concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  The trial court properly held that the arresting officer lacked probable cause to place petitioner under arrest.

¶ 2     In this case, defendant, Michael A. Gordon (petitioner), was arrested but later acquitted for driving under the influence of alcohol (DUI). The trial court also granted petitioner's request to rescind the statutory summary suspension after finding that the arresting officer lacked probable cause to suspect petitioner was operating his motorcycle while under the influence of alcohol. The State appeals.

¶ 3                                    I. BACKGROUND

¶ 4        On June 15, 2018, the State charged petitioner with DUI pursuant to section 11-501(a)(2)

of the Illinois Vehicle Code (the Code). 625 ILCS 5/11-501(a)(2) (West 2018). The same day,

petitioner filed a petition to rescind the statutory summary suspension (petition to rescind) he

received as part of his DUI arrest.

¶ 5        On July 23, 2018, the trial court conducted a hearing on the petition to rescind. Tina

Jasudowicz, an officer with the Manhattan Police Department, testified that she investigated a

motorcycle accident on June 12, 2018, at approximately 10 p.m. Upon arrival at the BP Amoco

gas station, the officer observed a female lying on the pavement near a gas pump. The officer

also observed petitioner kneeling next to the female. After speaking with witnesses on the scene,

the officer learned that the female had fallen off the back of a motorcycle driven by petitioner.

The officer inspected the motorcycle and concluded it was undamaged.

¶ 6        At the scene, petitioner informed the officer that he agreed to provide the female

passenger a ride on his motorcycle from Gallagher's Pub to the gas station to make a purchase.

During this conversation, petitioner informed the officer that he had consumed one beer before

leaving the pub. The officer testified that she could smell a "little bit" of alcohol on petitioner's

breath but advised the court that petitioner's speech was not slurred, and petitioner was not

swaying as he spoke. Based on these observations, the officer believed petitioner may be

impaired. The officer activated the camera in her squad car and administered a portable breath

test (PBT), with petitioner's consent, after the passage of a 15-minute observation period. The

PBT result revealed that petitioner's blood alcohol level was .109, in excess of the legal

limitations.

¶ 7    After obtaining the PBT results, the officer conducted a horizontal gaze nystagmus (HGN) test. The HGN test did not reveal any indication of impairment. Before starting the other field sobriety tests, defendant informed the officer that he had a "bum ankle" with bolts and rods holding his left ankle together. Next, the officer explained and demonstrated the walk-and-turn test to petitioner. The officer testified that petitioner started the test before the instructions were completed, stepped off the line, and failed to touch heel to toe, indicating three clues of impairment. The officer also requested the petitioner to complete the one-leg stand test. According to the officer, she observed that petitioner swayed and did not keep his foot six inches off the ground.

¶ 8    The officer testified that the presence of two or more clues on each of the field sobriety tests signifies impairment. Following the administration of the PBT, the HGN examination, and the completion of two physical field sobriety tests, the officer placed petitioner under arrest for driving under the influence of alcohol in violation of section 11-501(a)(2) of the Code.

¶ 9    At this time, defense counsel published the video recording of the tests for the court's consideration. The video recording was admitted into evidence and is included in the record on appeal. The trial court also allowed defense counsel's request to introduce the records certifying that the PBT device was tested on January 3, 2018, and June 6, 2018,[1] and was functioning properly on those dates.

¶ 10    On cross-examination, the officer testified that witnesses at the scene advised the officer that petitioner was only partially responsible for the female falling off his motorcycle. The officer failed to elaborate on what information she obtained from the witnesses regarding their conclusions.

---

[1]The officer also stated that the last test date of the PBT device was June 13, 2018.

¶ 11    Petitioner testified that he drove his motorcycle approximately three blocks from Gallagher's Pub to the gas station on the night in question. Petitioner's female friend rode on the back of his motorcycle. Petitioner consumed one beer prior to leaving the pub. Petitioner explained that he entered the gas station at approximately five miles per hour, traveled over a rumble strip, and felt the motorcycle jump a little bit when his passenger fell off the back of the motorcycle. Petitioner did not believe his passenger was holding on in the moments just before falling off the motorcycle. According to petitioner, he did not lose control and the motorcycle did not fall. The passenger sustained a head injury. Law enforcement arrived within minutes.

¶ 12    Petitioner explained that he told the officer that he consumed one beer. Petitioner also detailed and described the timing of the PBT test and the field sobriety tests administered by the officer. Petitioner testified that he successfully completed all of the field sobriety tests as instructed, including walking heel to toe. Petitioner also testified that he did not have any difficulty with his speech, balance, or comprehension of the officer's questions and instructions.

¶ 13    The defense rested and the State requested that the court deny petitioner's petition to rescind. Instead, the trial court granted petitioner's petition to rescind. The court made the following findings:

> "All right. So the question is probable cause to believe he's — the [petitioner] is under the influence of alcohol, operating a motor vehicle and should submit to breath testing to determine that. With regard to it we're seeing here the officer was called to the scene of an accident for somebody falling off the back of a motorcycle and relatively little speed with the explanation being that had gone over a median rumble strip. Other than that there is nothing to indicate anything about the operation of the motor vehicle, the motorcycle being a causative factor for the person's injuries.

4

Apparently the first thing that the officer did was ask for the [PBT] test which showed a relatively high result, and I guess one thing I would mention is even if it shows a low result doesn't — how does that affect the officer's probable cause? I think as pointed out by Mr. Ivec, when you have an [HGN] test which I think is one of the more reliable in terms of its purpose which is merely to show consumption of alcohol and the officer testifies that she see no — none of the clues on the [HGN] test, it gets a positive result of one score or another on the [PBT] test.

The question — and she questions him. The [petitioner] responds that he's had one beer. I think it would be reasonable for the officer to wonder why there is a disparity between the [HGN] test and the relatively high read on a [PBT] device which we don't know really one way or the other in terms of its accuracy at that point had she followed it or thought to check into it as to whether or not it was operating properly. But nonetheless the [petitioner's] explanation as to his activities or what happened is quite consistent I think with the results that we're seeing between those two tests.

So then in terms of addressing his level of impairment with regard to the other performance tests which I've seen the video, I mean quite frankly I believe the officer was kind of struggling with administering those tests, following the little pocket handbook that she did and that she had here in court today. When she demonstrated the [walk-and-turn] test, very clearly at least two occasions she certainly did not go precisely heel to toe. As far as there being any error in following instructions, I didn't see anything made here and certainly not repeated.

The State's pointed out that he was swaying during the course of the [one-leg] stand test which was very prominent when he started the test. I think it's often times

quite, quite a conundrum and I don't think it's a very good indication. But even so with the various clues that we have, they really don't rise to the level of showing any kind of impairment, so I'm going to grant the petition to rescind. I don't think she had enough information for probable cause."

¶ 14 Following the trial court's ruling, the parties immediately proceeded with a stipulated bench trial based on the evidence presented during the hearing on petitioner's petition to rescind.[2] The trial court, finding no probable cause for the arrest, found petitioner not guilty of DUI. The State appeals the trial court's ruling on the petition to rescind.

¶ 15                                      II. ANALYSIS

¶ 16 On appeal, the State argues the trial court erred by granting petitioner's petition to rescind because the record reveals the officer had probable cause to arrest petitioner. When examining the trial court's ruling on a petition to rescind, reviewing courts employ a dual standard of review. *People v. Wear*, 229 Ill. 2d 545, 561 (2008). A reviewing court will uphold the trial court's findings of fact unless such findings demonstrate clear error. *Id.* Thus, a reviewing court may only reject the trial court's factual findings if they are against the manifest weight of the evidence. *People v. Sorenson*, 196 Ill. 2d 425, 431 (2001). The trial court's decision is against the manifest weight of the evidence only when the opposite conclusion is clearly apparent, or when the court's findings are unreasonable, arbitrary, or not based on the evidence. *Best v. Best*, 223 Ill. 2d 342, 350 (2006). Although reviewing courts afford great deference to the trial court's factual findings, the trial court's ultimate legal ruling involving probable cause is reviewed *de novo*. *Wear*, 229 Ill. 2d at 561.

---

[2]The parties further stipulated that petitioner refused a later chemical test at the police station.

¶ 17       During a hearing on a petition to rescind, the petitioner bears the burden of producing *prima facie* evidence that the officer lacked probable cause to believe petitioner was driving under the influence. *People v. Durden*, 2017 IL App (3d) 160409, ¶ 16. When determining whether reasonable grounds existed for an arrest, courts utilize the probable cause analysis derived from the fourth amendment. *Wear*, 229 Ill. 2d at 560. "Probable cause to arrest exists when the facts known to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that the arrestee has committed a crime." *Id*. at 563. "[T]he existence of probable cause depends on a totality of the circumstances at the time of the arrest[,]" which includes dealing with the probabilities arising from the factual and practical considerations of everyday life. *Id*. at 564.

¶ 18       In this case, it is undisputed that the officer did not witness the incident and that upon arrival on the scene moments after the incident, the officer observed that the motorcycle was undamaged. The officer spoke to witnesses at the scene who reported that defendant was only partially responsible for the accident, although the officer did not elaborate on whether the witnesses explained the reasoning for this conclusion.

¶ 19       With regard to the field sobriety tests, we have carefully reviewed the video recording. The video recording confirms the trial court's observations that neither the walk-and-turn nor the one-leg stand tests revealed significant clues indicative of impairment. Additionally, it would be reasonable to conclude that any unsteadiness displayed by petitioner during the physical tests could have been caused, entirely or in part, by defendant's injured ankle. Further, the officer candidly, and we presume truthfully, testified that the HGN test revealed no indication of impairment, that petitioner's speech was not slurred, and that he was not swaying as he spoke to the officer. To the officer's credit, the officer's testimony about the petitioner's speech and

physical state were corroborated by the events depicted in the video recording. The video recording also demonstrates that petitioner was both polite and cooperative at all times.

¶ 20 We recognize that the PBT result of .109 is indicative of intoxication. However, a PBT is one of several available investigative tools intended to aid an officer's probable cause determination. See *People v. Davis*, 296 Ill. App. 3d 923, 928 (1998). In this case, the result of the frequently relied upon investigative tool, the PBT, was not corroborated by another frequently used field sobriety test, the HGN test. The State maintains that the negative outcome of the HGN is neutral but not contradictory. We agree. Consequently, a probable cause analysis required the officer to consider the petitioner's performance on the other field sobriety tests and the circumstances surrounding the passenger's fall from the motorcycle, together with the outcome of the PBT test.

¶ 21 Our standard of review dictates the outcome of this appeal. In part, it is the officer's credible testimony about a faint odor of alcohol and the inconclusive HGN testing coupled with the petitioner's performance, documented by the recording of the field sobriety tests, that support the trial court's findings that the officer lacked probable cause to believe petitioner was under the influence of the alcohol.

¶ 22 In conclusion, the trial court's factual findings are not contrary to the manifest weight of the evidence contained in this record. Based on these factual findings, we conclude the trial court's determination that the officer lacked probable cause to believe petitioner was under the influence of alcohol must be affirmed.

¶ 23 III. CONCLUSION

¶ 24 The judgment of the circuit court of Will County is affirmed.

¶ 25 Affirmed.