2015 ND 185

Morgan R. KROSCHEL, Appellant

v.

Grant LEVI, Director, North Dakota
Department of Transportation,
Appellee.

No. 20140265.

Supreme Court of North Dakota.

July 7, 2015.

Mark A. Friese, Fargo, ND, for appellant.

Andrew Moraghan, Office of Attorney General, Bismarck, ND, for appellee.

CROTHERS, Justice.

[¶ 1] Morgan R. Kroschel appeals from a district court judgment affirming the Department of Transportation's suspension of her driving privileges. Kroschel argues the officer acted outside his territorial jurisdiction and was without lawful authority to arrest Kroschel. We reverse.

I

[¶ 2] Ryan Haskell is an officer with the North Dakota State University Police Department. He was driving outside NDSU campus ˙and observed Kroschel turn across a designated turn lane rather than enter a travel lane. The officer followed the vehicle before making a stop. At no time during this incident was the officer or Kroschel on NDSU property. Officer Haskell ultimately arrested Kroschel for driving under the influence of alcohol.

[¶ 3] At the administrative hearing, Kroschel argued the officer did not have jurisdiction to arrest her because she was not on NDSU property. The Department argued a Memorandum of Understanding ("MOU") between the Fargo Police Department and NDSU granted Officer Haskell city-wide jurisdiction. The MOU was signed by NDSU President of Business and Finance, NDSU Director of University Police and· Safety, Interim Fargo Police Chief and the Fargo Mayor. The MOU states NDSU, the Fargo Police Department and the City of Fargo agree to accept these "guidelines for cooperation in the provision of personal and property on the NDSU campus, and to provide for appointment of NDSU police officers City-wide jurisdiction." The MOU allows appointment of NDSU officers as special police officers under Fargo Municipal Ordinance 5–0104. The hearing officer found

the MOU grants NDSU police city-wide jurisdiction, giving the officer authority to stop Kroschel. The hearing officer suspended Kroschel's license for 180 days. Kroschel appealed to the district court, arguing the hearing officer's decision is not in accordance with the law.

[¶ 4] The hearing officer found:

"The Fargo Police Chief had authority to swear Officer Haskell in as an officer with authority throughout the city. NDCC 40–20–05; Fargo Municipal Ordinance 5–0104. The Memorandum of Understanding provides the Fargo Police Department significant information, access, quality assurance and cooperation from the NDSU Police. Exhibit 16. In regard to colleges and universities, the North Dakota Legislature has approved 'the employment of law enforcement officers having concurrent jurisdiction with other law enforcement officers to enforce laws and regulations at its institutions.' NDCC 15–10–17(2)."

[¶ 5] The district court affirmed the hearing officer's decision but under different authority of law. The district court found:

"Section 44–08–24(1) gives authority to North Dakota state and local law enforcement agencies to 'establish policies and procedures or enter agreements with other criminal justice agencies of this state' to assist other state and local criminal justice agencies and to exchange peace officers on a temporary basis. The department argues the MOU derives its authority from § 44–08–24, even though the MOU was executed in 2006 and § 44–08–24 was not enacted until 2011. . . . The MOU by its terms gives no expiration date. According to Officer Haskell, when he stopped Ms. Kroschel he was acting under the authority of the MOU. By all indications the MOU is a continuing agreement, still

in effect. There is no suggestion that it has been terminated or rescinded. Moreover, there is no requirement that the MOU make reference to § 44–08–24 before it can derive authority from § 44–08–24. When § 44–08–24 was enacted, the MOU immediately acquired the legal support of § 44–08–24. . . . Section 44–08–24 provides independent legal authority for the MOU. Finally, it is clear from the language of the statute that the phrase 'on a temporary basis' only applies to the exchange of peace officers in § 44–08–24(1)(b) and not to the assistance referred to in § 44–08–24(1)(a)."

The district court also found "§ 54–40.3–04 only applies to agreements between a criminal justice agency of this state and another state. The MOU in this case is an agreement between two law enforcement agencies within the state, and therefore, § 54–40.3–04 is inapplicable." Kroschel appeals.

## II

[¶ 6] "We review an administrative revocation of a driver's license under N.D.C.C. § 28–32–46." *Vanlishout v. N.D. Dep't of Transp.*, 2011 ND 138, ¶ 12, 799 N.W.2d 397. We must affirm the Department's order unless:

"1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge."

N.D.C.C. § 28–32–46. "When an appeal involves an interpretation of a statute, a legal question, this Court will affirm the agency's order unless it finds the order is not in accordance with the law." *Johnson v. Dep't of Transp.*, 2004 ND 148, ¶ 5, 683 N.W.2d 886. "Although this Court's review is limited to the record before the administrative agency, 'the district court's analysis is entitled to respect if its reasoning is sound.'" *Deeth v. Dir., N.D. Dep't of Transp.*, 2014 ND 232, ¶ 10, 857 N.W.2d 86 (quoting *Obrigewitch v. Dir., N.D. Dep't of Transp.*, 2002 ND 177, ¶ 7, 653 N.W.2d 73). "We review appeals from the final judgment of a district court in the same manner as provided for in N.D.C.C. § 28–32–46 or N.D.C.C. § 28–32–47." *Deeth*, at ¶ 11. "An agency's conclusions on questions of law are subject to full review." *Vanlishout*, 2011 ND 138, ¶ 12, 799 N.W.2d 397.

## III

[¶ 7] The authority for NDSU police officers to act on the NDSU campus is not being challenged. The authority of Fargo police officers to act on the NDSU campus is not being challenged. The issue is whether NDSU Police Officer Haskell had authority to arrest Kroschel under the circumstances present here. "This Court has recognized that as a general rule a police officer acting outside his jurisdiction is without official capacity and without official power to arrest." *Johnson*, 2004 ND 148, ¶ 10, 683 N.W.2d 886 (citing *State v. Littlewind*, 417 N.W.2d 361, 363 (N.D. 1987)). Kroschel argues Officer Haskell did not have authority to arrest her.

[¶ 8] The hearing officer found Officer Haskell's authority to arrest Kroschel existed under N.D.C.C. § 40–20–05, Fargo Municipal Ordinance 5–0104 and the MOU. The Department does not argue on appeal that Fargo Municipal Ordinance 5–0104 provided authority for Officer Haskell to arrest Kroschel. Section 40–20–05(1), N.D.C.C., provides:

"The chief of police shall perform such duties as shall be prescribed by the governing body for the preservation of the peace. The chief of police shall have the authority to administer oaths to police officers under the chief's supervision. Within the city limits ... the police officers and watchmen of the city shall perform the duties and exercise the powers of peace officers as defined and prescribed by the laws of this state."

The hearing officer found section 40–20–05 gave the Fargo Police Chief the authority to swear in Haskell as an officer with authority throughout Fargo.

[¶ 9] Section 40–20–05, N.D.C.C., outlines the powers and duties of the chief of police and police officers in municipal governments. "When a statute's language is clear and unambiguous, the letter of the statute cannot be disregarded under the pretext of pursuing its spirit, as legislative intent is presumed clear from the face of the statute." *State v. Beilke*, 489 N.W.2d 589, 592 (N.D.1992) (citing N.D.C.C. § 1–02–05). "In interpreting a statute, we give words their plain, ordinary and commonly understood meaning." *Id.* (citing N.D.C.C. § 1–02–02). "We consider the ordinary sense of

statutory words, the context in which they were enacted, and the purpose which prompted the enactment." *Id.*

[¶ 10] The statute states, "The chief of police shall have the authority to administer oaths to police officers *under the chief's supervision.*" N.D.C.C. § 40–20–05(1) (emphasis added). The Department concedes Officer Haskell is not under the supervision of the Fargo Police Chief, which is necessary to act under the authority of N.D.C.C. § 40–20–05. NDSU police officers are not normally under the supervision of the Fargo Police Chief. NDSU police officers are not regularly employed as municipal police officers. Section 40–20–05 did not authorize the Fargo Police Chief to administer an oath to Officer Haskell so that Officer Haskell would have law enforcement jurisdiction throughout Fargo. Therefore, N.D.C.C. § 40–20–05 did not authorize NDSU Officer Haskell to arrest Kroschel under the circumstances present here.

[¶ 11] The hearing officer also found N.D.C.C. § 15–10–17(2) authorized NDSU to have concurrent jurisdiction with other law enforcement agencies. Under N.D.C.C. § 15–10–17(2), the state board of higher education may "[a]uthorize the employment of law enforcement officers having concurrent jurisdiction with other law enforcement officers to enforce laws and regulations at its institutions." Kroschel argues the language "at its institutions" limits the jurisdiction of NDSU police officers to NDSU campus and property. The district court found Kroschel's reading unduly restrictive. The district court found the statute "does not automatically preclude a university police department from acquiring jurisdiction off campus, for example, by cooperation agreements with other law enforcement agencies."

[¶ 12] Section 15–10–17, N.D.C.C., outlines the powers and duties of the state board of higher education. The board of higher education may "[a]uthorize the employment of law enforcement officers having concurrent jurisdiction with other law enforcement officers to enforce laws and regulations *at its institutions.*" N.D.C.C. § 15–10–17(2) (emphasis added). By the plain language of this statute, the board may employ law enforcement officers and permit concurrent jurisdiction with other law enforcement officers *at its institutions.* The statute does not authorize the board to permit campus law enforcement to act outside its institutions.

[¶ 13] The district court also found N.D.C.C. § 15–10–17 did not authorize Officer Haskell to arrest Kroschel, explaining this provision authorizes the board to "contemplate cooperation with other law enforcement agencies . . . at its university." However, the district court noted, "[I]t is not necessary to explore the question of whether § 15–10–17–(2) [sic] can work the other way as well to contemplate a university police department having concurrent jurisdiction with local law enforcement by agreement or otherwise since § 44–08–24 appears to specifically authorize cooperation agreements between law enforcement agencies." The district court therefore upheld the hearing officer's decision based on law not relied upon by the hearing officer.

[¶ 14] The district court reviews the hearing officer's decision and upholds it if it is not contrary to law. N.D.C.C. § 28–32–46. We will uphold decisions of the hearing officer if correct but not for the legal basis cited by the hearing officer. *See Bryl v. Backes,* 477 N.W.2d 809, 813 (N.D.1991). The Department argues here that it is of no consequence the hearing officer based his decision in part on N.D.C.C. § 40–20–05 because the issue on review is whether the hearing officer's decision is contrary to law. We must affirm the Department's order unless "[t]he order

is not in accordance with the law." N.D.C.C. § 28–32–46. Therefore, we must decide whether Officer Haskell's arrest was authorized by law.

## IV

▮ [¶ 15] The district court found Officer Haskell had authority to arrest Kroschel under N.D.C.C. § 44–08–24. Section 44–08–24(1), N.D.C.C., provides:

"Any appointive or elective agency or office of peace officers, as defined in section 12–63–01, may establish policies and enter agreements with other agencies and offices and a state or local criminal justice agency of this state may establish policies and procedures or enter agreements with other criminal justice agencies of this state to:

a. Assist other state and local criminal justice agencies; and

b. Exchange the criminal justice agency's peace officers with peace officers of another criminal justice agency on a temporary basis."

[¶ 16] Kroschel argues N.D.C.C. § 44–08–24 does not give Officer Haskell authority to arrest Kroschel outside the NDSU campus because N.D.C.C. § 44–08–24 permits agencies to assist one another and share officers only on a temporary basis. The Department argues the statute's "temporary basis" only applies to exchanging officers and not to assisting officers. The district court found, "[I]t is clear from the language of the statute that the phrase 'on a temporary basis' only applies to the exchange of peace officers in § 44–08–24(1)(b) and not to the assistance referred to in § 44–08–24(1)(a)." The statutory dispute is whether "temporary basis" applies to "assist" and to "exchange."

[¶ 17] Under section 44–08–24(1)(a), N.D.C.C., law enforcement agencies may enter into agreements to "[a]ssist other state and local criminal justice agencies."

"Assist" is "an act of assistance" or "aid." *Merriam–Webster's Collegiate Dictionary* 74 (11th ed.2005). "Assist" means "to give help to," "aid" or "an instance or act of helping." *Webster's New World Dictionary* 84 (2nd ed.1980).

▮ [¶ 18] A related North Dakota statute permits law enforcement "assistance" in particular and singular events or on a non-continuous basis. *See* N.D.C.C. § 44–08–20 (authorizing law enforcement agencies to have the power of peace officers when "responding to requests from other law enforcement agencies or officers for aid and assistance" and to "assist during the necessary absence from office by the requesting officer"). "A cardinal rule of statutory construction requires interpretation of related provisions together, if possible, to harmonize and to give meaning to each provision." *Martin v. Stutsman Cnty. Soc. Servs.*, 2005 ND 117, ¶ 13, 698 N.W.2d 278 (citation and quotation marks omitted). "Statutes should be read in relation to other statutes involving the same or similar subject matter in an attempt to discern legislative intent." *Trade 'N Post, L.L.C. v. World Duty Free Americas, Inc.*, 2001 ND 116, ¶ 21, 628 N.W.2d 707.

▮ [¶ 19] Similar to section 44–08–24, section 44–08–20, N.D.C.C., authorizes peace officers responding to requests from other law enforcement agencies to provide aid and assistance outside their normal jurisdiction. *See State v. Graven*, 530 N.W.2d 328 (N.D.1995); *State v. Beilke*, 489 N.W.2d 589 (N.D.1992). Section 44–08–20, N.D.C.C., gives "[p]eace officers employed by a law enforcement agency within the state [ ] the power of a peace officer" to respond to requests from other law enforcement agencies or officers for aid and assistance in "a particular and singular violation or suspicion of violation of law." Under section 44–08–20(3), addi-

tional powers of peace officers permit giving assistance only by request, and only for a particular instance which does not "constitute a continuous request for assistance outside the purview of the jurisdiction of the law enforcement agency by which a peace officer is employed." Section 44–08–24(1)(a) permits officers to "assist" other officers. "Assistance," in another similar statute, is permitted only on a temporary, non-continuous basis. *State v. Demars,* 2007 ND 145, ¶ 10, 738 N.W.2d 486 ("This Court has also recognized that city police officers have jurisdiction to stop vehicles and arrest individuals outside of their geographical jurisdiction when responding to requests from another law enforcement agency for aid and assistance."); *State v. Graven,* 530 N.W.2d 328, 330 (N.D.1995) (holding that although the officer's observation and stop of defendant's vehicle occurred outside of the officer's geographical jurisdiction, the officer still had jurisdiction where he was requested by a state trooper to stop the suspect's vehicle); *Mead v. North Dakota Dep't of Transp.,* 1998 ND App 2, ¶ 12, 581 N.W.2d 145 (holding peace officer who responded to a request from another law enforcement agency for assistance had authority to complete the investigation and make an arrest). For the reasons stated, the term "assist" implies temporary, non-continuous assistance, or a singular instance of assistance. Therefore, N.D.C.C. § 44–08–24(1)(a) grants law enforcement temporary, non-continuous authority to assist another law enforcement agency.

[¶ 20] The district court held section 44–08–24(1)(b), N.D.C.C., permits the exchange of officers only on a temporary basis. *See* N.D.C.C. § 44–08–24(1)(b) ("Exchange the criminal justice agency's peace officers with peace officers of another criminal justice agency *on a temporary basis.*") (emphasis added). "When a stat-

ute's language is clear and unambiguous, the letter of the statute cannot be disregarded under the pretext of pursuing its spirit, as legislative intent is presumed clear from the face of the statute." *Beilke,* 489 N.W.2d at 592 (citing N.D.C.C. § 1–02–05). On its face, section 44–08–24(1)(b) grants the authority to provide only temporary exchange of peace officers. *See also Beilke,* at 592 ("In interpreting a statute, we give words their plain, ordinary and commonly understood meaning. We consider the ordinary sense of statutory words, the context in which they were enacted, and the purpose which prompted the enactment.") (internal citations omitted). The district court correctly interpreted N.D.C.C. § 44–08–24(1)(b).

[¶ 21] Our reading of the N.D.C.C. § 44–08–24 granting authority for temporary assistance and temporary exchange is confirmed by legislative history. In contemplating the adoption of that section, the North Dakota House of Representatives discussed the current provisions providing singular instances of assistance from another jurisdiction, such as N.D.C.C. § 44–08–20(3). *See Hearing on H.B. 1251 Before the House Political Subdivisions Comm.,* 62nd N.D. Legis. Sess. (Feb. 10, 2011) (testimony of Ken Sorenson, Ass't Attorney General of North Dakota.) ["House Hearing on H.B. 1251"]. West Fargo Police Department Assistant Chief Mike Reitan testified:

"Section 44–08–20 subsection 3 of the North Dakota Century Code currently allows a peace officer to respond to requests from other agencies or officers for aid and assistance. Such a request from an agency or officer means only a request for assistance as to a particular and singular violation or suspicion of violation of law, and does not constitute a continuous request for assistance outside the purview of the jurisdiction of the law enforcement agency by which a

peace officer is employed.. Once the immediate emergency is done the assisting officer no longer has authority."

*House Hearing on H.B. 1251, supra* (testimony of Mike Reitan, West Fargo Police Dep't Ass't Chief).

[¶ 22] Reitan's explanation of section 44–08–20(3) follows our interpretation of section 44–08–20(3) in *Mead v. North Dakota Dep't of Transp.*, 1998 ND App 2, 581 N.W.2d 145. There, the Court explained:

"Section 44–08–20(3), N.D.C.C., authorizes peace officers responding to requests from other law enforcement agencies to provide aid and assistance outside their normal jurisdiction. *See State v. Graven*, 530 N.W.2d 328 (N.D. 1995); [*State v.] Beilke*, [489 N.W.2d 589 (N.D.1992)]. Section 44–08–20(3), N.D.C.C., gives '[p]eace officers employed by a law enforcement agency within the state the power of a peace officer' to respond to requests from other law enforcement agencies or officers for aid and assistance of a particular and singular violation or suspicion of violation of law."

*Id.* at ¶ 11.

[¶ 23] The distinct need for section 44–08–24 in addition to section 44–08–20(3) was explained as follows:

"A number of areas·in the state have joint task force[s] dealing with drugs or other serious crimes and when they enter into those agreements whether it is here in Burleigh County or Cass County the sheriff is cause to deputize them to give them that statutory authority and we are not quite sure that is a clean way to do it where this Section 1 of the amended portion of the bill here would provide that authority for those joint task forces that operate on a daily basis throughout the state. . . ."

*House Hearing on H.B. 1251, supra*, (testimony of Mike Reitan, West Fargo Police Dep't Ass't Chief). Reitan explained, "This authority is necessary to conduct operations such as Special Weapons and Tactics (SWAT), joint task force operations, to assist one another during an increased operations tempo or during periods when staff members of an agency would be unavailable for duty." *Hearing on H.B. 1251 Before the Senate Judiciary Comm.*, 62nd N.D. Legis. Sess. (March 9, 2011) (testimony of Mike Reitan, West Fargo Police Dep't Ass't Chief) ["Senate Hearing on H.B. 1251"]. Reitan continues, "Section one of the bill would allow an agency to enter into an agreement with another agency to provide assistance and exchange officers on a temporary basis." *Senate Hearing on H.B. 1251, supra*, (testimony of Mike Reitan, West Fargo Police Dep't Ass't Chief).

[¶ 24] Reitan, explaining the purpose for this provision, stated, "Recent events within North Dakota have taxed agencies and stretched available resources very thin. A flood event, a hazardous material spill, a major crime can divert resources to handle the particular event for hours, days and even weeks." *Senate Hearing on H.B. 1251, supra*, (testimony of Mike Reitan, West Fargo Police Dep't Ass't Chief). He explained that section 44–08–20(3), N.D.C.C., allows assistance only for a particular and singular violation of law and did not permit continuous assistance outside the jurisdiction of the employed officer, which would not remedy this problem. *Senate Hearing on H.B. 1251, supra*, (testimony of Mike Reitan, West Fargo Police Dep't Ass't Chief). Reitan summarized:

"This bill is based on a strong North Dakota tradition. Neighbor agencies should be allowed to come to the aid of neighbor agencies with the manpower necessary to overcome any obstacle. Resources must be allocated and utilized to conduct the sustained operations of a

*unique event* while still providing for the continuation of services in the community."

*Senate Hearing on H.B. 1251, supra,* (testimony of Mike Reitan, West Fargo Police Dep't Ass't Chief) (emphasis added).

[¶ 25] The legislative history makes clear that the statute was enacted to address unique events and joint task forces, beyond a singular violation of law as was then available under N.D.C.C. § 44–08–20(3). The statute as it now exists contemplates only temporary assistance or temporary exchange between law enforcement agencies. We therefore conclude N.D.C.C. § 44–08–24 did not give Officer Haskell authority to arrest Kroschel under the circumstances present in this case.

## V

[¶ 26] Kroschel argues Officer Haskell did not have authority to arrest her under a joint powers agreement adopted under N.D.C.C. ch. 54–40.3. Kroschel argues under N.D.C.C. § 54–40.3–04 that a MOU must be approved by the governing body, here the board of higher education. The district court found section "54–40.3–04 only applies to agreements between a criminal justice agency of this state and another state. The MOU in this case is an agreement between two law enforcement agencies within the state, and therefore, § 54–40.3–04 is inapplicable."

[¶ 27] Section 54–40.3–04, N.D.C.C., provides:

"A state or a local criminal justice agency of this state, with the approval of its governing body, may enter an agreement in the manner provided in section 54–40.3–01 *with another state or a political subdivision of another state,* for the joint exercise of peace officer duties. A peace officer acting under an agreement pursuant·to this section must be licensed under chapter 12–63, or *if the peace*

*officer is from another state,* the officer must be licensed or certified by the other state's licensing or certifying authority. A peace officer acting under an agreement pursuant to this section has full peace officer authority in any jurisdiction that is a party to the agreement. Before an agreement entered under this section is effective, the governing body for each criminal justice agency must have approved the agreement and the attorney general must have determined the agreement is legally sufficient."

(Emphasis added.) Section 54–40.3–01(1), N.D.C.C., provides:

"Any county, city, township, city park district, school district, or other political subdivision of this state, upon approval of its respective governing body, may enter into an agreement *with any other political subdivision of this state* for the cooperative or joint administration of any power or function that is authorized by law or assigned to one or more of them. Any political subdivision of this state may enter into a joint powers agreement *with a political subdivision of another state* or political subdivision of a Canadian province if the power or function to be jointly administered is a power or function authorized by the laws of this state for a political subdivision of this state and is authorized by the laws of the other state or province."

(Emphasis added.)

[¶ 28] Section 54–40.3–04 authorizes criminal justice agencies to enter agreements "in the manner provided in section 54–40.3–01." Section 54–40.3–01(1) authorizes agreements between political subdivisions of this state or of another state. The joint powers agreements under N.D.C.C. ch. 54–40.3 permit agreements between both interstate and intrastate political subdivisions. Section 54–40.3–04 authorizes

agreements between both interstate and intrastate criminal justice agencies.

[¶ 29] The MOU is an agreement between NDSU, the City of Fargo and the Fargo Police Department. Neither NDSU nor Fargo Police Department is a political subdivision. Section 15–10–01, N.D.C.C., describes North Dakota State University as a "state educational institution." NDSU is not a political subdivision of this state; it is an institution. *See* N.D.C.C. § 26.1–21–01(4) (defining "political subdivision" as "a county, township, park district, school district, city, and any other unit of local government which is created either by statute or by the Constitution of North Dakota for local government or other public purposes"); N.D.C.C. § 52–10–02(5) (" 'Political subdivision' includes an instrumentality of a state, of one or more of its political subdivisions, or of a state and one or more of its political subdivisions, but only if the instrumentality is a juristic entity which is legally separate and distinct from the state or subdivision and only if its employees are not by virtue of their relation to the juristic entity employees of the state or subdivisions."); N.D.C.C. § 32–12.1–02(6) ("Political subdivision" "[d]oes not include nor may it be construed to mean either the state of North Dakota or any of the several agencies, boards, bureaus, commissions, councils, courts, departments, institutions, or offices of government which collectively constitute the government of the state of North Dakota.").

[¶ 30] Nor is the Fargo Police Department a political subdivision. N.D.C.C. § 32–12.1–02(6) ("Political subdivision" "[d]oes not include nor may it be construed to mean either the state of North Dakota or any of the several *agencies,* boards, bureaus, commissions, councils, courts, *departments,* institutions, or offices of government which collectively constitute the government of the state of North Dakota.") (emphasis added). Although the MOU appears to be an agreement between NDSU and the Fargo Police Department, we note the MOU is approved by the Fargo Board of City Commissioners and is signed by the mayor. The mayor's signature denotes authorization and execution by the City of Fargo, a political subdivision.

[¶ 31] NDSU Police Department is an institutional subdivision of NDSU, authorized under N.D.C.C. § 15–10–17(2) and governed by the board of higher education. Section 54–40.3–01(2) permits joint powers agreements between political subdivisions and institutions, stating:

"Any county, city, township, city park district, school district, or other political subdivision of this state may enter into an agreement in the manner provided in subsection 1 with any agency, board, or institution of the state for the undertaking of any power or function which any of the parties is permitted by law to undertake. Before an agreement entered into pursuant to this subsection is effective, the respective governing body or officer of the state agency, board, or institution must approve the agreement and the attorney general must determine that the agreement is legally sufficient."

N.D.C.C. § 54–40.3–01(2). Chapter 54–40.3 authorizes joint powers agreements between the City of Fargo, a political subdivision, and NDSU, an institution.

[¶ 32] Section 54–40.3–04 authorizes interstate and intrastate agreements between criminal justice agencies. Both section 54–40.3–04 and 54–40.3–01(2) require approval from the governing body—whether it be the institution, board or state agency. Joint powers agreements involving institutions further require the attorney general to determine the agree-

ment is legally sufficient. N.D.C.C. § 54–40.3–01(2). This MOU was signed by NDSU President of Business and Finance, NDSU Director of University Police and Safety, Interim Fargo Police Chief and the Fargo Mayor. The MOU was not executed by the North Dakota Board of Higher Education. Neither the district court nor the hearing officer found the MOU constituted sufficient approval by the governing bodies. Section 54–40.3–04 requires authorization by the state board of higher education and the City of Fargo for the agreement to be valid. Under N.D.C.C. § 54–40.3–01(2), the attorney general also must determine that the agreement is legally sufficient. Here, on this record, the MOU was deficient because it lacked execution and approval by the board of higher education and determination by the attorney general that the agreement is legally sufficient.

[¶ 33] Both section 54–40.3–04 and 54–40.3–01(2) permit joint powers agreements only if the functions undertaken are authorized by law. Section 54–40.3–01(2) authorizes agreements with institutions only "for the undertaking of any power or function which any of the parties is permitted by law to undertake." As noted above, N.D.C.C. § 15–10–17 outlines the powers of the board of higher education. The board may "[a]uthorize the employment of law enforcement officers having concurrent jurisdiction with other law enforcement officers to enforce laws and regulations at its institutions." N.D.C.C. § 15–10–17(2). We concluded the board may only authorize the employment of law enforcement officers at its institutions. The Department does not offer nor do we find authorization for the board to enter its law enforcement agency into joint powers agreements outside its institutions. Therefore, chapter 54–40.3, N.D.C.C., did not authorize Officer Haskell to arrest

Kroschel under the circumstances present here.

VI

[¶ 34] Kroschel argues she is entitled to attorney's fees and costs under N.D.C.C. § 28–32–50(1) if she prevails and the Court determines the Department acted without substantial justification. The Department argues Kroschel has not persuasively established the Department acted without substantial justification. The Department argues its position is substantially justified given the district court upheld the hearing officer's decision under different authority of law.

[¶ 35] The appropriate standards for application of the "substantially justifiable" test were summarized in *Lamplighter Lounge, Inc. v. State:*

"[Section 28–32–50, N.D.C.C.,] sets forth a two-part test which must be met in order to properly award attorney fees: first, the nonadministrative party must prevail, and second, the agency must have acted without 'substantial justification.' Here, the nonadministrative party prevailed and, therefore, the first requirement has been fulfilled. The second requirement is shaped by our definition of substantial justification. In defining this term we have been guided by the United States Supreme Court's definition of the term 'substantially justified.' There it was said that substantially justified means 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person. A position may be justified, despite being incorrect, so long as a reasonable person could think that it has a reasonable basis in law and fact. Substantial justification represents a middle ground between the automatic award of fees to the prevailing party on one side, and awarding fees only when a position

is frivolous or completely without merit on the other."

523 N.W.2d 73, 75 (N.D.1994) (internal citations and quotation marks omitted). "Merely because an administrative agency's actions are not upheld by a court does not mean that the agency's action was not substantially justified." *Tedford v. Workforce Safety & Ins.*, 2007 ND 142, ¶ 25, 738 N.W.2d 29. The hearing officer and district court believed a reasonable basis in law and fact existed to uphold Kroshel's arrest by Officer Haskell. Award of attorney's fees is not warranted.

### VII

[¶ 36] Sections 40–20–05 and 15–10–17(2), N.D.C.C., do not give NDSU police officers authority to arrest persons outside the NDSU campus. Section 44–08–24, N.D.C.C., only applies to temporary assistance and exchange of officers in unique situations and not on an ongoing basis. Chapter 54–40.3, N.D.C.C., did not authorize the joint exercise of powers between campus police and municipal police. Therefore, NDSU Police Officer Haskell did not have authority to arrest Kroschel under N.D.C.C. §§ 40–20–05, 15–10–17(2) or 44–08–24 or N.D.C.C. ch. 54–40.3. Officer Haskell lacked authority to arrest Kroschel under the circumstances present here.

[¶ 37] We reverse the district court judgment affirming the Department of Transportation's suspension of Kroschel's driving privileges.

[¶ 38] GERALD W. VANDE WALLE, C.J., WILLIAM F. HODNY, S.J., LISA FAIR McEVERS and DALE V. SANDSTROM, JJ., concur.

[¶ 39] The Honorable WILLIAM F. HODNY, S.J., sitting in place of KAPSNER, J., disqualified.